### PEOPLE v MILTON

Docket No. 55466. Submitted October 11, 1974 (Calendar No. 20).— Decided December 19, 1974.

Edgar Milton was convicted of first-degree murder in the Genesee Circuit Court, Anthony J. Mansour, J. The Court of Appeals affirmed, Quinn, P. J., and J. W. Fitzgerald and Van Valkenburg, JJ. (Docket No. 11046). Defendant, by delayed appeal, asserts that 1968 PA 154, amending the Revised Judicature Act to create the district court and providing whatever jurisdiction it may have to bind over persons accused of felony, violates *Const, 1963, art 4, § 24* (the title-body clause, that no law shall embrace more than one object, which shall be expressed in its title), and that this unconstitutionality and resulting lack of jurisdiction renders the criminal prosecution void. *Held:*

1. The title of the Revised Judicature Act is sufficiently broad to include criminal as well as civil jurisdiction;

2. The title of the Revised Judicature Act provides adequate notice to the public and the Legislature that the act contains provisions affecting jurisdiction in criminal matters; the title of an act need not serve as an index of all that the act contains, and the provisions conferring criminal jurisdiction on the district court, although not directly mentioned in the title, are germane to the general purpose of the RJA.

1. Statutes—District Court Act—Felony—Constitutional Law— Title-Body Clause.

The district court act which provides whatever jurisdiction that court may have to bind over persons accused of felony does not violate the title-body clause of the Constitution, that no law shall embrace more than one object, which shall be expressed in its title (Const 1963, art 4, § 24; 1968 PA 154).

References for Points in Headnotes
[1, 2] 73 Am Jur 2d, Statutes § 49.
[3, 4] 73 Am Jur 2d, Statutes § 343.
[5] 73 Am Jur 2d, Statutes § 300.
[6] 73 Am Jur 2d, Statutes §§ 111–118.
[7] 73 Am Jur 2d, Statutes § 98.

2. STATUTES—REVISED JUDICATURE ACT—DISTRICT COURT ACT—CON-
STITUTIONAL LAW—TITLE-BODY CLAUSE.

The literal meaning of the words "organization and jurisdiction"
and the words "powers and duties", which appear in the title of
the Revised Judicature Act and are not qualified by the word
"civil", is sufficiently broad to include criminal as well as civil
jurisdiction, powers and duties; therefore, the subject matter,
including criminal matters, of the district court act, an addition
to the Revised Judicature Act, does not violate the title-body
clause of the Constitution, that no law shall embrace more
than one object, which shall be expressed in its title (Const
1963, art 4, § 24; MCLA 600.101 *et seq.;* 1968 PA 154).

3. STATUTES—AMENDMENTS—VALIDITY.

When passing new legislation, the Legislature is free to enact an
entire new and independent act or amend *any* act to which the
subject of new legislation is germane, auxiliary or incidental;
not infrequently there will be a number of existing acts to
which the new legislation would be germane, auxiliary or
incidental and the legislative choice will not be held invalid
merely because an alternative location for the new legislation
might appear to some more appropriate.

4. STATUTES—CRIMINAL LAW—AMENDMENTS—VALIDITY—CONSTITU-
TIONAL LAW.

Location of an amendatory statute dealing with criminal matters
in the Revised Judicature Act rather than in the Code of
Criminal Procedure does not thereby render the amendment
invalid, and it is incorrect to consider the entitlement of the
Code of Criminal Procedure in deciding whether the subject
matter of the amendment is germane to the object expressed in
the title of the Judicature Act; the constitutional validity of an
amendatory statute does not turn on an appraisal of whether it
was located in the most appropriate of the possible many
statutes to which it is germane.

5. STATUTES—REVISED JUDICATURE ACT—CRIMINAL LAW—LEGISLATIVE
INTENT.

Both the Judicature Act of 1915 and the Revised Judicature Act,
bearing substantially the same title, contain provisions con-
cerning criminal matters, and an intent to confine these acts to
civil matters cannot properly be ascribed to the Legislature
(MCLA 600.101 *et seq.).*

6. STATUTES—VALIDITY—TITLE—CONSTITUTIONAL LAW.

The title of a statute need not serve as an index of all that the
act contains.

7. STATUTES—TITLE—REVISED JUDICATURE ACT—COURTS—JURISDIC-
    TION—NOTICE—DISTRICT COURT.

Just as the title of the Revised Judicature Act is adequate notice
of the civil and criminal jurisdiction of the Supreme Court and
the circuit court, to the extent there stated, and of the Court of
Appeals, so too it is adequate notice of the civil and criminal
jurisdiction of the district court; the more general opening
clauses of the entitlement are not confined to civil matters, and
the provisions of the district court act amendment conferring
criminal jurisdiction on the district court are germane to the
general purpose declared in the entitlement (MCLA 600.101 *et
seq.*).

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, and *John A. Wilson*
and *Keith D. Roberts,* Assistants Attorney General, for the people.

*State Appellate Defender Office* (by *Larry R.
Farmer),* for defendant on appeal.

LEVIN, J. Edgar Milton appealed his conviction
of second-degree murder. The Court of Appeals
affirmed in an unreported memorandum opinion,
but did not discuss the issues now presented which
were subsequently raised by a post-conviction pe-
tition for a writ of habeas corpus which we treated
as a motion for reconsideration of a previous de-
nial of leave and granted.

Following his arrest, Milton was bound over by
a district court to circuit court for trial. He asserts
that 1968 PA 154, creating the district court and
providing whatever jurisdiction it may have to
bind over felons, violates Const 1963, art 4, § 24,
the title-body clause:

"No law shall embrace more than one object which
shall be expressed in its title"

and that this unconstitutionality and resulting

lack of jurisdiction renders void the criminal pros-
ecution against him.

We hold that the district court act does not
violate the title-body clause and affirm Milton's
conviction.

I

The Revised Judicature Act, 1961 PA 236,[1] su-
perseded the Judicature Act enacted in 1915. The
RJA, as did the 1915 Judicature Act, contains
provisions concerning the organization and powers
of the Supreme Court and, in a separate chapter,
of the circuit court. A chapter concerning the
organization and powers of the Court of Appeals
was added in 1964. The RJA also contains chap-
ters concerning proceedings and procedures in the
courts and at least one chapter concerning an
extra-judicial procedure.[2]

In 1968 the Legislature added Chapters 81–86
and other sections to the RJA thereby establishing
the district court and providing for its jurisdiction
and powers. In addition to civil jurisdiction in
cases where the amount in controversy does not
exceed $3,000,[3] the act confers criminal jurisdic-
tion to try certain misdemeanors and to hold
preliminary examinations in felony cases.[4]

---

[1] MCLA 600.101 *et seq.;* MSA 27A.101 *et seq.*

[2] Chapter 32 provides for foreclosure of mortgages by advertise-
ment.

[3] By amendment increased to $10,000. 1971 PA 148; MCLA
600.8301; MSA 27A.8301.

[4] By amendment, 1969 PA 261, it now provides:
"The district court shall have jurisdiction of

\* \* \*

"(d) Preliminary examinations in all felony cases and misdemeanor
cases not cognizable by the district court, but there shall not be a
preliminary examination for any misdemeanor to be tried in a district
court." MCLA 600.8311; MSA 27A.8311.

Milton contends that the title of the RJA and its statutory scheme evidence an intent that its provisions pertain only to civil matters. He asserts that statutory provisions defining criminal jurisdiction belong in the Code of Criminal Procedure.[5] He asks us to hold that the 1968 act creating the district court is defective insofar as it purports to vest criminal jurisdiction in that court because criminal jurisdiction is not germane to the RJA and statutory provisions defining criminal jurisdiction should be set forth in the Code of Criminal Procedure.

Read literally, the subject matter of the 1968 addition (district court act) to the RJA, placed alongside the title of that act, does not violate the title-body clause. While the entitlement of the RJA does refer to the "forms and attributes of *civil* claims and actions; the time within which *civil* actions and proceedings may be brought in said courts; pleading, evidence, practice and procedures in *civil* actions and proceedings in said courts" (emphasis supplied), these clauses follow the opening language of the title: "AN ACT to revise and consolidate the statutes relating to the organization and jurisdiction of the courts of this state; the powers and duties of such courts, and of the judges and other officers thereof". The words "organization and jurisdiction" and the words "powers and duties" are not qualified by the word "civil". The literal meaning of those words manifestly is sufficiently broad to include criminal as well as civil jurisdiction, powers and duties.

Milton responds that the title of the RJA must be read in conjunction with the title of the Code of Criminal Procedure and that when so read "[i]t can only be concluded that each act seeks to define

---

[5] MCLA 760.1 *et seq.;* MSA 28.841 *et seq.*

the jurisdiction of courts in their respective spheres; that is, that the Revised Judicature Act defines the jurisdiction of civil courts while the Code of Criminal Procedure defines the jurisdiction of criminal courts.[6] * * * The Revised Judicature Act title speaks *generally* of jurisdiction, but then proceeds to catalogue purely civil procedure" while "the title to the Code is much more specific." (Emphasis in original.)

## II

Milton's contentions find support in *People v Stanley,* 344 Mich 530; 75 NW2d 39 (1956), in which this Court ruled violative of the title-body clause an amendment to the 1915 Judicature Act providing that a writ of error to the Supreme Court shall issue as a matter of course following final judgment in a criminal case involving the personal liberty of the appellant. The title of the 1915 Judicature Act and of the RJA are in all material respects identical.[7]

In reaching its conclusion, the *Stanley* Court reasoned, much as does appellant Milton:

"The title of the judicature act negatives a conclusion that it was intended by the legislature to apply to procedure in criminal cases. The later enactment of the code of criminal procedure, without making reference to the judicature act, shows the legislative intent. These 2 acts were obviously intended by the legislature to

[6] The opening clauses of the Code of Criminal Procedure read: "AN ACT to revise, consolidate and codify the laws relating to criminal procedure and to define the jurisdiction, powers, and duties of courts and of the judges and other officers thereof under the provisions of this act * * * ." 1927 PA 175, immediately preceding MCLA 760.1; MSA 28.841.

[7] The only change is that in the phrase "the forms and attributes of civil * * * actions", the words "and attributes" did not appear in the 1915 enactment.

apply to the practice and procedure in civil cases separate from that in criminal cases. A mere reading and comparison of the titles of the judicature act and of the code of criminal procedure can lead to only one conclusion—one was intended by the legislature to refer to practice and procedure in civil cases, and the other to criminal procedure." *People v Stanley, supra,* 540.

In support of its reasoning, the Supreme Court referred to the three clauses in the title, previously quoted, where the word "civil" appears,[8] adding: "Nowhere does the title of the act, nor the provisions in the act itself, expressly apply to appeals in criminal cases. To the contrary, the legislature, as before indicated, subsequently enacted the code of criminal procedure, applying specially and solely to that subject." *People v Stanley, supra,* 539.

The *Stanley* Court nowhere acknowledged or otherwise adverted to the opening clauses of the title of the 1915 Judicature Act, the clauses not qualified by the word "civil".

The Attorney General, emphasizing the opening clauses of the RJA's title, argues that *Stanley* voids only RJA provisions concerning criminal *procedure* and not those pertaining to criminal *jurisdiction.* Milton responds that the proffered jurisdiction-procedure dichotomy is "facile", "illusory", "transparent" and "intellectually dishonest."

We agree with Milton that the distinction between jurisdiction and procedure would not be a sound basis of reconciling our conclusion that the

---

[8] "It should be noted that the title to the judicature act, *supra,* which PA 1954, No 53, purports to amend, obviously was intended to apply to, and in express terms does apply to, 'the forms of *civil* actions; the time within which *civil* actions and proceedings may be brought in said courts; pleading, evidence, practice and procedure in *civil* actions and proceedings in said courts.' " (Emphasis in original.) *People v Stanley, supra,* 539.

inclusion of criminal jurisdiction provisions in the RJA does not violate the title-body clause, with *Stanley's* conclusion that the inclusion of an appeal as of right in criminal cases violated the Judicature Act, both acts bearing the same title.

We are of the opinion that the *Stanley* analysis is incorrect in considering the entitlement of another act (the Code of Criminal Procedure) in deciding whether the subject matter of the challenged act (the 1915 Judicature Act) was within and germane to the object expressed in its title.

When passing new legislation, the Legislature is free either to enact an entirely new and independent act or amend *any* act to which the subject of the new legislation is "germane, auxiliary or incidental".[9]

Not infrequently there will be a number of existing acts to which the new legislation would be germane, auxiliary or incidental. The legislative choice will not be held invalid merely because an alternative location for the new legislation might appear to some more appropriate.

In *Detroit Board of Street Railway Commissioners v Wayne County,* 18 Mich App 614, 622–623; 171 NW2d 669 (1969), the Court of Appeals rejected a claim of the DSR that a statutory provision imposing liability for ad valorem taxes on public transportation facilities acquired by home rule cities violated the title-body clause because the amendment to the home-rule act imposing the liability should properly have been located in the property tax law:

"It might have been better draftsmanship to have placed the provision concerning the taxability of municipal transportation utilities in the general property tax

---

[9] *See Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917).

law (where one might expect to find it) rather than in
the home rule act. There is, however, no constitutional
requirement that the legislature do a tidy job in legis-
lating. It is perfectly free to enact bits and pieces of
legislation in separate acts or to tack them on to
existing statutes even though some persons might think
that the bits and pieces belong in a particular general
statute covering the matter. The constitutional require-
ment is satisfied if the bits and pieces so enacted are
embraced in the object expressed in the title of the
amendatory act and the act being amended."[10]

No purpose would be served by perpetuating the
*Stanley* analysis. The constitutional validity of an
amendatory statute does not turn on an appraisal
of whether it was located in the most appropriate
of the possibly many statutes to which it is ger-
mane.

Nor does *Stanley* stand up when analyzed in the
light of the facts as they were when the Judica-
ture Act was enacted. In 1915 there was no codifi-
cation of criminal procedure. The legislation on
criminal procedure, while compiled as Part Two of
Title XV of the Compiled Laws of 1915, was not a
codification, but rather consisted of provisions of
the Revised Statutes of 1846 interspersed with
numerous subsequent enactments. When the 1915
Judicature Act was adopted, the Legislature could
not have had any intention with regard to a Code
of Criminal Procedure enacted in 1927—12 years
later.

Contrary to Milton's assertions, the 1915 Judica-

---

[10] As originally enacted the RJA contained a chapter concerning
assignment of accounts receivable. This chapter was repealed upon
enactment of the Uniform Commercial Code which, in Art 9 (Secured
Transactions), covers the subject matter formerly dealt with in the
RJA. No doubt the Legislature thought that the subject matter—
secured transactions—could properly be included in either the RJA or
the UCC. The original location in the RJA of a specific kind of
secured transaction did not preclude inclusion of the subject matter
generally in the UCC.

ture Act did contain provisions concerning criminal procedure. It was provided that "[t]he Supreme Court shall have * * * jurisdiction of suits, actions and matters brought before it by writ of certiorari or writ of error, when the same shall be allowed by law to any inferior court, to magistrates and other officers, as well in cases of prosecution for any offense, misdemeanor or penalty, in the name of the people of this state * * * ".[11]

The civil jurisdiction of the circuit courts was indeed expressly stated, but the Judicature Act also provided: "Said court shall also have and exercise all the powers usually possessed and exercised by courts of record at the common law * * * " except as modified by statute or rule of the Supreme Court.[12]

The statutory provisions eliminating the common-law disability of defendants in criminal cases from testifying in their own defense were also part of the 1915 Judicature Act.[13] Additionally, the 1915 Judicature Act states the disqualification of a married person from testifying against his or her spouse with the exception for cases of "prosecution for bigamy" and for "a crime committed against the children of either or both".[14]

---

[11] 1948 CL 601.9.

[12] 1948 CL 606.1, subd 6.

[13] "No person shall be excluded from giving evidence in any matter, civil or criminal, by reason of crime or for any interest of such person in the matter, suit, or proceeding in question, or in the event of such matter, suit or proceeding, in which such testimony may be offered * * * ." 1948 CL 617.63. Now MCLA 600.2158; MSA 27A.2158.

"No person shall be disqualified as a witness in any civil or criminal case or proceeding by reason of his interest in the event of the same as a party or otherwise * * * . Provided, however, That a defendant in any criminal case or proceeding shall only at his own request be deemed a competent witness, and his neglect to testify shall not create any presumption against him, nor shall the court permit any reference or comment to be made to or upon such neglect." 1948 CL 617.64. Now MCLA 600.2159; MSA 27A.2159.

[14] 1948 CL 617.67. Now MCLA 600.2162; MSA 27A.2162.

Manifestly, the *Stanley* Court erred in ascribing to the 1915 Legislature an intent to confine the Judicature Act to strictly civil matters.

We appreciate that it is arguable that the statutory references in the Judicature Act to the jurisdiction of this Court and the circuit court were unnecessary as the jurisdiction of the Supreme Court and of the circuit court in civil and criminal matters was provided for in the 1908 Constitution at least to the extent not divested by law.[15] Be that as it may, the Legislature did specifically provide for this Court's jurisdiction in criminal matters and did specifically cover at least two evidentiary questions arising in criminal cases; we cannot properly ascribe to the Legislature an intent to confine the Judicature Act strictly to civil matters.

Nor was the 1968, district court act, amendment to the RJA the first inclusion in the RJA of language concerning criminal jurisdiction. In addition to the continuing inclusion of the evidentiary provisions referred to, there is again a reference to the jurisdiction of this Court:

"The supreme court has jurisdiction and power over:

"(1) Any matter brought before it by appropriate writ to any inferior court, magistrate or other officer." MCLA 600.215; MSA 27A.215.[16]

This reference to a magistrate clearly refers to criminal matters. "Any matter" would include criminal as well as civil matters. In addition to the express statement that the circuit court has original jurisdiction to determine civil claims and rem-

---

[15] Const 1908, art 7, §§ 4, 10.

[16] When the RJA was enacted in 1961, prior to the adoption of the present constitution, there appears to have been a question whether the jurisdiction of the Supreme Court was wholly constitutionally established. The commentary to the RJA seems to indicate that the drafters were under the impression that they were thereby defining this Court's jurisdiction.

edies,[17] reiterated again is that court's power and jurisdiction to the extent "possessed by courts of record at the common law as altered by the constitution and laws of this state and the rules of the supreme court".[18]

The language concerning the jurisdiction of the courts to try criminal cases embodied in the Code of Criminal Procedure is so general that one cannot readily determine whether the circuit court's jurisdiction in criminal cases is constitutionally vested, derives from the common law, the Judicature Act (and its successor, the Revised Judicature Act), or the Code of Criminal Procedure.[19]

More saliently, in 1964 the Legislature added Chapter 3 to the RJA, thereby establishing the Court of Appeals. In contrast with the Supreme Court and the circuit court, the jurisdiction of the Court of Appeals is entirely statutory.[20] RJA 308 provides the Court of Appeals with jurisdiction on appeal from:

"All final judgments from the circuit courts, court of claims, and recorder's court, except judgments on ordinance violations in the traffic and ordinance division of recorder's court." MCLA 600.308; MSA 27A.308.

Manifestly, this confers jurisdiction on the Court of Appeals in criminal cases. *There is no other source of its jurisdiction.*

Either the Court of Appeals has jurisdiction of

[17] MCLA 600.605; MSA 27A.605.

[18] MCLA 600.601; MSA 27A.601.

[19] "The various courts and persons of this state now having jurisdiction and powers over criminal causes, shall have such jurisdiction and powers as are now conferred upon them by law, except as such jurisdiction and powers may be hereinafter repealed, enlarged or modified." MCLA 762.1; MSA 28.844.

[20] "The jurisdiction of the court of appeals shall be provided by law and the practice and procedure therein shall be prescribed by rules of the supreme court." Const 1963, art 6, § 10.

criminal appeals under the RJA or this Court is obliged to take all criminal appeals to secure the right in every criminal prosecution "to have an appeal as a matter of right".[21]

It is indeed ironic that this matter has come full circle. In *Stanley,* by finding a violation of the title-body clause, this Court avoided appeals as of right in criminal cases.[22] If we adhere to *Stanley,* then, perforce, this Court was obliged, until the legislative response,[23] to grant appeal as of right in every criminal case and the Court of Appeals was relieved of that jurisdiction—the very jurisdiction which prompted the creation of that Court.

### III

Milton further contends that the title to the RJA does not provide adequate notice to the public or the Legislature[24] that the RJA contains provisions affecting jurisdiction in criminal matters.

This Court has had frequent occasion to consider like claims. It is now well established that the title

[21] Const 1963, art 1, § 20.

[22] In 1953, this Court issued opinions in 290 cases (265 civil, 25 criminal). That same year 326 cases were heard (302 civil, 24 criminal) and 442 were filed.

In 1954, opinions in 241 cases (226 civil, 15 criminal) were issued; 317 cases (295 civil, 22 criminal) were heard; 522 cases filed.

In 1955, opinions in 219 cases (200 civil, 19 criminal) were released; 308 cases (278 civil, 30 criminal) were heard; 502 cases filed.

And in 1956, opinions issued in 228 cases (218 civil, 10 criminal); 328 cases (308 civil, 20 criminal) were heard; 523 were filed.

No doubt, had this Court upheld the constitutionality of the act challenged in *Stanley* it would have resulted in at least a doubling of its mandatory—appeal as of right—caseload.

[23] The title of the RJA was amended by 1974 PA 52 to add the underlined words in the following clause: "pleading, evidence, practice and procedure in civil <u>and criminal</u> actions and proceedings in said courts".

[24] *See People v Wohlford,* 226 Mich 166; 197 NW 558 (1924).

need not serve as an index[25] of all that the act contains:

"An abridgement of all those sections is not essential to a sufficient title. While it contains various related provisions not directly indicated or enumerated in the title, under the construction of this constitutional requirement, as many times reviewed by this court, if the act centers to one main general object or purpose which the title comprehensively declares, though in general terms, and if provisions in the body of the act not directly mentioned in the title are germane, auxiliary, or incidental to that general purpose, the constitutional requirement is met." *Loomis v Rogers,* 197 Mich 265, 271; 163 NW 1018 (1917).

More recently, in *Advisory Opinion re Constitutionality of 1972 PA 294,* 389 Mich 441; 208 NW2d 469 (1973), Justice M. S. COLEMAN's and my opinions addressed similar challenges to the no-fault automobile liability act. Justice COLEMAN wrote at pp 464–465:

"It is and was reasonable and logical for the Legislature to classify the matter herein referred to as related to the Insurance Code. Such action cannot be said to have been prompted by deceit or some ulterior motive. * * * The amendment in question cannot be said to have allowed the passage of a law not fully understood (although the subject matter may be complex and difficult for a layman to understand), or that the amendment brought into the Code subjects having no connection with the Insurance Code. The Legislature and the public were well aware of the intention and context of this legislation."

I wrote at 389 Mich 488–489:

"The word 'object' expresses an intrinsically elastic concept. * * *

---

[25] *People ex rel Wayne Prosecuting Attorney v Sill,* 310 Mich 570, 574; 17 NW2d 756 (1945).

"Codification of multifarious enactments would be impossible if the constitution obliges the Legislature to define the object of a codification in narrow terms. Especially in the case of a codification, the Legislature is free to conceive of the object of its endeavors in terms of a common denominator and to express that conception in umbrella words."

In *Regents of the University of Michigan v Pray*, 264 Mich 693, 697; 251 NW 348 (1933), this Court said: "Title to a codification statute can scarcely be expected to embody reference to every detail of the act".

Just as the title of the RJA is adequate notice of the civil and criminal jurisdiction of the Supreme Court and the circuit court, to the extent there stated, and of the Court of Appeals, so too it is adequate notice of the civil and criminal jurisdiction of the district court.

In conclusion, the correct question is not whether the Legislature might have included provisions concerning the criminal jurisdiction of the district court in the Code of Criminal Procedure, but rather whether provisions establishing criminal jurisdiction are germane to the general purpose of the RJA.

While there are specific and therefore limiting clauses in the entitlement of the RJA, the more general, opening clauses of the entitlement speak of the "organization and jurisdiction" and "powers and duties" of the courts of this state and are not confined to civil matters.

The RJA centers on one main general object or purpose which the title comprehensively declares, though in general terms.[26] The provisions conferring criminal jurisdiction on the district court,

---

[26] *See People v Sowall*, 279 Mich 261, 266; 271 NW 751 (1937); *Loomis v Rogers, supra.*

although not directly mentioned in the title, are germane to that general purpose.

1968 PA 154 does not violate Const 1963, art 4, § 24. The defendant's conviction is affirmed.

T. M. KAVANAGH, C. J., and T. G. KAVANAGH, SWAINSON, WILLIAMS, and M. S. COLEMAN, concurred with LEVIN, J.

J. W. FITZGERALD, J., did not participate in the decision of this case.