PEOPLE v SHELINE

OPINION OF THE COURT

1. CRIMINAL LAW—ENTRAPMENT.

The Michigan Supreme Court has adopted the objective test for the defense of entrapment: whether the governmental agents have acted in such a way as is likely to instigate or create a criminal offense, regardless of the predisposition to crime of the particular defendant involved.

2. CRIMINAL LAW—ENTRAPMENT—TRIAL JUDGE—JURY QUESTION—PREJUDICE.

Entrapment issues must be resolved by the trial judge in all cases subsequent to the adoption of the objective test for entrapment on September 18, 1973; submission of an entrapment defense to the jury after that date is reversible error, whether or not prejudice is shown.

3. CRIMINAL LAW—PROSECUTOR'S REMARKS—MISCARRIAGE OF JUSTICE.

A prosecutor's allegedly prejudicial remarks are not grounds for reversal of a defendant's conviction where no objection was raised and the comments were not so prejudicial as to constitute a miscarriage of justice.

4. COURTS—DISTRICT COURTS—CRIMINAL JURISDICTION.

District courts have jurisdiction to bind over criminal defendants to the circuit court.

5. CRIMINAL LAW—INSTRUCTIONS TO JURY—CONFLICTING INSTRUCTIONS—PRESUMPTIONS.

A jury which has been given both an incorrect and a correct

REFERENCES FOR POINTS IN HEADNOTES

[1] 21 Am Jur 2d, Criminal Law § 143.

[2] 75 Am Jur 2d, Trial § 727.

[3, 6] 58 Am Jur 2d, New Trial § 57.

75 Am Jur 2d, Trial § 192.

[4] 20 Am Jur 2d, Courts § 12 *et seq.*

21 Am Jur 2d, Criminal Law §§ 376–382.

[5] 75 Am Jur 2d, Trial §§ 628, 920.

[7] No reference.

statement of the law is presumed to have followed the erroneous portion.

PARTIAL CONCURRENCE BY O'HARA, J.

6. CRIMINAL LAW—PROSECUTOR'S REMARKS—DRUGS AND NARCOTICS.

   *A prosecutor's argument was well within the scope of permissible comment where the argument was directed to whether the jury should believe defendant's testimony in view of his unstable life style, his demeanor on the stand, his admitted use of drugs, the magnitude of the drug problem, and the fact that persons involved with drugs are not necessarily the most stable or reliable persons.*

7. COURTS—APPEAL AND ERROR—OPINIONS—REVERSED AND REMANDED —NEW TRIAL—CRIMINAL LAW.

   *Use of the phrase "reversed and remanded for a new trial", by appellate courts, should be discontinued in criminal appeals because after a reversal it is the decision of the prosecutor whether to proceed again with a new information.*

Appeal from Monroe, James J. Kelley, Jr., J. Submitted June 11, 1975, at Lansing. (Docket No. 20696.) Decided September 10, 1975. Leave to appeal granted, 395 Mich 817.

Timothy S. Sheline was convicted of breaking and entering a building with intent to commit larceny. Defendant appeals. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *James J. Rostash,* Prosecuting Attorney (Prosecuting Attorneys Appellate Service, *Edward R. Wilson,* Director, and *Howard C. Marderosian,* Special Assistant Attorney General, of counsel), for the people.

*Jessica R. Cooper,* Assistant State Appellate Defender, for defendant.

Before: ALLEN, P. J., and D. F. WALSH and O'HARA,* JJ.

ALLEN, P. J. On March 21, 1974, defendant was convicted by jury of breaking and entering a building with intent to commit larceny. MCLA 750.110; MSA 28.305. He was sentenced to a 6-1/2 to 10-year prison term, and appeals of right. One of several assignments of error[1] raised by defendant

---

* Former Supreme Court Justice, sitting on the Court of Appeals by assignment pursuant to Const 1963, art 6, § 23 as amended in 1968.

[1] Defendant maintains that the following statements by the prosecutor during closing argument constitute reversible error:

"And now a fourth one, members of the jury, he comes here before you under oath and he says, 'Yes, that's right, I was there, and I did more than I told Detective Fiedler. I helped them carry the stuff, but it wasn't my fault. Heck, I just shot up heroin.'

"What's the greatest purge this country has right now, members of the jury? Drugs. And here is a man who has used several different kind by his own admission under oath to you. What kind of credibility can we give to a person like this?

"And then he comes and he tells us, yes, I did it, but it's not my fault, because I shot up heroin and didn't know what I was doing and Fisher was making me. Can we believe this type of testimony coming from this type of person, who says he makes his living playing pool and golf, and since May through October or longer hasn't worked at all? Where did he get his money and how did he get his money, members of the jury? I think one of the ways was probably shown by his ability to so easily get into this place and steal from another person. No consideration or respect for his fellow man's property. He comes here and now using last, and I won't describe what I think of the type defense he's using, blaming it on Fisher. Blaming it on somebody else. Blaming it on somebody else who—if it wasn't Fisher, he'd be blaming it on somebody else.

\* \* \*

"Sure David Fisher would rather be somewhere else, rather than sitting on that witness stand exposing himself to the drug element that Sheline belonged to and perhaps placing his life in jeopardy, because he's got to go back to Toledo and live among these people.

\* \* \*

"I don't think that the Defendant seemed very scared there when I was cross-examining him. In fact, I noted on numerous occasions a smile, or, what might be more accurately termed a smirk, on his face. He didn't seem to be nervous or jittery. He seemed to be pretty relaxed. Every time that he gave an answer that sounded pretty good to him, it showed on his face. He didn't look like somebody who was

requires reversal. The dispositive question, the nature of which foregoes the need for detailed recitation of the facts, is whether the trial judge must determine the issue of entrapment in trials held after the decision in *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973).

In *Turner, supra,* our Supreme Court adopted the objective test for entrapment as enunciated by Justice Stewart in his dissent in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973). The objective standard dispenses with the element concerning defendant's criminal predisposition, and focuses on the conduct of the involved police—whether their acts have gone beyond the simple offering of a chance to commit crime. Under this theory, moreover, the defense of entrapment is an issue to be decided by the trial judge:

"Phrased another way, the question is whether—regardless of the predisposition to crime of the particular

scared up there admitting a crime as they would have us think. His testimony was not like Wiser's."
At the least, the prosecutor was straddling the fence which separates advocacy from error. No objection was raised to the argument below, however. Further, the trial court instructed the jury that "[Y]ou may consider the arguments, statements and remarks of the lawyers, but not as being either the evidence or the law in this case. You should disregard anything said by a lawyer which is not supported by the evidence or by your own general knowledge and experience." We opine that the comments were not so prejudicial as to constitute a miscarriage of justice. *People v Auer,* 393 Mich 667; 227 NW2d 528 (1975).

No matter which test one applies—the reasonably effective assistance of counsel standard set forth in *Beasley v United States,* 491 F2d 687 (CA 6, 1974), or the sham or farce standard of *People v Degraffenreid,* 19 Mich App 702, 710; 173 NW2d 317 (1969)—it is evident that defendant failed to show he was denied the effective assistance of counsel, although counsel was far from superlative, most especially with respect to obtaining process against a defense witness.

Defendant's contention that the district courts lack jurisdiction to bind over criminal defendants to circuit court was rejected by the Supreme Court in *People v Milton,* 393 Mich 234; 224 NW2d 266 (1974).

defendant involved—the governmental agents have acted in such a way as is likely to instigate or create a criminal offense. Under this approach, the determination of the lawfulness of the Government's conduct must be made—as it is on all questions involving the legality of law enforcement methods—by the trial judge, not the jury." *Russell, supra,* at 441

Numerous panels of this Court have paid homage to the procedure of requiring that the trial judge resolve the question of entrapment. *People v Fraker,* 63 Mich App 29; 233 NW2d 878 (1975), *People v Zeegers,* 61 Mich App 546; 233 NW2d 76 (1975), *People v Habel, (On Rehearing),* 53 Mich App 399; 220 NW2d 74 (1974).

In the instant case, the trial court submitted the question of entrapment to the jury:

"In your deliberation on this matter you may consider that, provided they do not entrap a person, law enforcement officers or their agents in their work are justified in using stealth, strategy, deception and undercover activity, and in merely affording opportunities or facilities for the commission of crime. Thus, law officers or their agents may engage in conduct that is likely, when objectively considered, to afford a person ready and willing to commit the crime, an opportunity to do so. But when their involvement in criminal activities goes beyond the mere offering of such an opportunity, and when their conduct is of such a kind that could induce or instigate the commission of a crime by one not ready and willing to commit it, then regardless of the character or propensities of the particular person induced, entrapment has occurred."[2]

---

[2] It is doubtful that the above instruction would withstand the *Turner* objective standard even if one assumed that submission of the question to the jury was appropriate. The introduction of the issue of predisposition, despite the disclaimer in the last phrases of the above charge, was improper. Where an instruction includes both an incorrect and a correct statement of the law, the jury will be presumed to have followed the erroneous portion. *People v Gilbert Johnson,* 52 Mich App 560; 218 NW2d 65 (1974).

The earlier cited cases are indicative of the fact that the trial court erred in submitting the question of entrapment to the jury. Nonetheless, the people argue that the initial decision recognizing this procedural requirement, *People v Habel, supra,* was not decided until after the instant defendant's trial.[3] Hence, the proposition announced in *Habel* and its progeny are not controlling, because *Habel* is not retroactive.[4] The argument misses the mark, since the retroactivity *vel non* of *Habel* is of no moment. The decision in *Habel* does not stand for any newly announced principle; it merely articulates and follows the mandate implicit in *Turner* that the judge, not the jury, must decide the question of entrapment:

"Although our Supreme Court in *Turner, supra,* was persuaded by the dissenting opinion of Justice Stewart in adopting the objective theory of entrapment, it did not provide an answer to the procedural question of whether the judge or jury determines entrapment.

\* \* \*

"The Supreme Court of Michigan has determined that the courts of this state are to be bound by the test of entrapment set forth in a dissenting opinion of the United States Supreme Court. The only logical conclusion to which this panel can come is that *our Supreme Court must have intended that the language of Justice Stewart,* above quoted, *should also prevail on the issue of the judge-jury matter."* (Emphasis added.) *Habel, supra,* at 400–401.

That this is precisely what the Supreme Court

[3] *Habel* was decided on May 29, 1974; defendant's trial commenced on March 15, 1974. *Turner* was decided on September 18, 1973.

[4] None of the cases decided since *Habel* involved the question presently before the Court. In *Zeegers,* the Court reversed on other grounds, and noted that upon retrial, the question of entrapment should be decided by the trial judge. In *Fraker,* the defendant's trial came after the decision in *Habel.*

intended is evident from the recent decision in *People v Auer,* 393 Mich 667; 227 NW2d 528 (1975).

In holding that *Turner* is to be accorded prospective application, the Court, through J. W. FITZGERALD, J., speaks to the judge-jury question:

"The existence of entrapment was submitted to the jury under instructions. The people's principal witness, Pamela Dinsmore, gave testimony, the thrust of which was to indicate that the criminal intent to sell marijuana originated in the mind of the defendant. While defendant and his witnesses contradicted this account, the question was jury-decided adversely to defendant. *There was no entrapment as a matter of law, the question properly being for the jury under applicable pre-Turner law."* (Emphasis added.) *Auer, supra,* at 677–678.

*Turner* pre-dated instant defendant's trial by approximately six months. Even absent the guiding hand of the *Habel* Court, this Court concludes that post-*Turner* entrapment issues are required (under *Turner)* to be resolved by the trial judge. It would be incredible to hold that *Habel's* existence, which we think correctly interprets what *Turner* mandates, may serve to bar affording defendant relief.

The people maintain that even if *Turner* stands for the view that a judge must determine the issue of entrapment, defendant's conviction should not be reversed, absent a showing of prejudice. We disagree.[5]

Reversed and remanded for new trial.

---

[5] Even if a showing of prejudice were necessary, we believe it existed in the instant case. Defendant took the stand at trial, and admitted his involvement in the charged offense. Under the traditional standard of entrapment—pre-*Turner*—admission of guilt is deemed a prerequisite to raising the defense of entrapment. *People v Bersine,* 48 Mich App 295, 299; 210 NW2d 501 (1973). Since the adoption of the objective standard, however, a defendant apparently will not have to take the witness stand in the presence of the jury and admit his guilt. It would appear that a hearing, similar to a

D. F. Walsh, J., concurred.

O'Hara, J. *(concurring in part; dissenting in part)*. I am writing separately in this case because I can find no precise decisional authority in Michigan establishing what precedential authority is established by a footnote. Appellate judges and justices vary greatly in their use and their content. The limited case authority on this subject from other jurisdictions apparently recognizes that footnotes should be given the same legal effect as material in the text of the opinion. 20 Am Jur 2d, Courts, § 189, p 525, 21 CJS, Courts, § 221, p 407.

I agree with Judge Allen that since the release of *People v Turner,* 390 Mich 7; 210 NW2d 336 (1973), the defense of entrapment is not jury submissible in Michigan.

*Turner* itself does not, as I read it, lay out the manner in which controverted contentions of the accused and the alleged entrapping officer or police agent are to be made of record.

It is my personal view that Mr. Justice Stewart in substance used the rationale of *Jackson v Denno,* 378 US 368; 84 S Ct 1774; 12 L Ed 2d 908 (1964),[1] by analogy in recognizing that it is beyond human mental limitations to allow a jury to hear evidence clearly establishing the corpus delicti of a given offense and at the same time charge that if

---

*Walker* hearing, will be held in the jury's absence. If defendant is successful in his entrapment defense, he will be entitled to a dismissal. If the court rules against defendant, the trial will proceed without the jury being apprised of the testimony by defendant during the proceedings should he choose not to testify. Because the Court cannot say for certain that instant defendant would have waived his privilege against self-incrimination and would have taken the witness stand (and admitted his guilt) had a proper hearing on the determination of entrapment been held, we think that sufficient showing of prejudice does exist.

[1] *See* Justice Stewart's dissenting opinion in *United States v Russell,* 411 US 423; 93 S Ct 1637; 36 L Ed 2d 366 (1973).

entrapment occurred this evidence is to be disregarded by them. I am moved to state that I sympathize with the trial judge in this case and in similar cases where a new rule is announced without spelling out the procedure to be followed as was done in *People v Walker (On Rehearing)*, 374 Mich 331; 132 NW2d 87 (1965), which spawned the so-called *"Walker"* hearing.

Nonetheless *Turner* had been released and was the published law at the time this case was tried. Whether the defendant here was prejudiced by jury submission of the issue, as Judge ALLEN holds, I'm sure I don't know. In any event he had the right to have the entrapment ruling made by the trial judge, prejudice or no prejudice. I think it would be very dangerous law to append this requirement to the rule of *Turner*, thus leaving the decision on that point to a reviewing appellate court.

Be all the foregoing as it may I feel I am bound to concur in reversal for the reason I have stated.

Now as to the footnotes. I am in total disagreement with my colleague's holding in footnote 1 that the prosecuting attorney was guilty of misconduct in his argument or that he was "straddling the fence". The thrust of the prosecutor's comments went to the issue of defendant's credibility and whether or not the jury should find the accused's testimony worthy of belief in view of, *inter alia*, his unstable life style, demeanor on the stand and admitted use of drugs. In particular I see nothing wrong with the reference to the magnitude of the drug problem and the fact that persons involved in the use of controlled substances are not necessarily the most stable or reliable persons in our society. Thus the prosecutor was well within the scope of permissible comment.

I also believe the time has come for me to express a long held personal opinion, even though I have been guilty of signing opinions which use the phrase "Reversed and remanded for new trial".

It is the function of appellate courts to affirm or reverse a conviction.

The status of the defendant is then exactly the same as it was before the verdict by the court or jury. Given the fact that he was bound over for trial in circuit court, whether the prosecutor decides to proceed again with a new information is his business, not the reviewing court which has no knowledge of what witnesses are available and other variables influencing the decision which the prosecuting attorney should be allowed to make. It is enough that we determine whether the conviction was or was not reversibly erroneous.

Thus it is my view that the phrase "Reversed and remanded for new trial", which if literally read *directs* the prosecuting attorney to proceed with a new trial, should be discontinued.

It is sufficient to say "Reversed and remanded to the trial court for such further proceedings as may properly ensue" or simply "Reversed and remanded".

Hence I concur in part and dissent in part, and vote with Judge ALLEN to reverse.