GRIEVANCE ADMINISTRATOR v UNDERWOOD

Docket No. 113180. Argued March 7, 2000 (Calendar No. 10). Decided
June 27, 2000.

The Attorney Grievance Commission filed a formal complaint against
David L. Underwood, charging him with misappropriating client
funds, neglecting a client matter, making false statements to the
commission during its investigation, failing to answer letters and
comply with a subpoena, and failing to appear at a show cause
hearing. When Mr. Underwood did not respond to the formal com-
plaint, and did not appear at the hearing on the complaint, a default
was entered against him, and the Attorney Discipline Board
entered an order revoking his license to practice law. Thereafter,
Mr. Underwood retained counsel to represent him in this matter.
Counsel sent a letter to the board, requesting it to reconsider its
decision and grant a stay of discipline until further judgment, and
later indicated to the board's Executive Director that he considered
the letter to be a delayed petition for review. The Executive Direc-
tor replied that it was not, and clarified the filing requirements for
such a petition. Mr. Underwood then filed a formal delayed petition
for review, which the commission opposed, arguing that it was
untimely because the deadline for filing a delayed petition for
review had passed. However, the board granted the petition, noting
that through counsel's letter, it was on notice that Mr. Underwood
was seeking review, and that, under the circumstances, neither the
public, the courts, the legal profession, nor the commission were
prejudiced by a delayed review. After considering Mr. Underwood's
responses to the misconduct charges, the board vacated the revo-
cation of his license, suspended his license for three years, and
imposed conditions upon his reinstatement. The commission
appeals.

In a unanimous opinion by Justice CAVANAGH, the Supreme Court
*held*:

MCR 9.118(A)(3) directs the Attorney Discipline Board to treat
the one-year limitation period of MCR 7.205(F) as a guideline,
rather than an absolute deadline. Because in this case, the board
did not abuse its discretion in considering the respondent's petition
despite the one-year guideline, under *Grievance Administrator v
Lopatin*, 462 Mich 235 (2000), which adopted new guidelines for

sanctions in attorney discipline cases, the case is remanded for a determination of the appropriate sanction.

1. Generally, petitions for review must be filed within twenty-one days after the hearing panel's order is served, but delayed petitions for review are permitted under MCR 9.118(A)(3), which provides that a delayed petition for review may be considered by the board chairperson under the guidelines of MCR 7.205(F). In turn, MCR 7.205(F)(3) provides that if an application for leave to appeal is filed more than twelve months after entry of the order or judgment on the merits, leave to appeal may not be granted. However, the plain language of MCR 9.118(A)(3) provides that MCR 7.205(F)'s one-year limitation period serves as a guide to the board's decision to hear a delayed petition, rather than as an unbending rule governing that decision. Construing MCR 9.118 to simply incorporate the one-year limitation period would be contrary to the canons of construction. The word "guidelines" would become surplusage.

2. Because the one-year limitation period is a guide rather than a mandate, the board has discretion to hear delayed petitions for review filed later than one year after a hearing panel's order becomes effective. In determining whether to hear a delayed petition for review, the board may take into account myriad relevant equitable considerations. In this case, it appropriately considered that it had notice of Mr. Underwood's intention to file a delayed petition for review, along with whether hearing the delayed petition would be prejudicial to the public, the courts, the legal profession, or the Grievance Administrator.

3. In light of *Lopatin*, the case is remanded to the board for application of the American Bar Association Standards for Imposing Lawyer Sanctions.

Affirmed and remanded.

*Robert E. Edick*, Acting Grievance Administrator, *Cynthia C. Bullington*, Assistant Deputy Administrator, and *Richard L. Cunningham*, Associate Counsel, for petitioner-appellant.

*Dunnings & Frawley, P.C.* (by *Stuart J. Dunnings, Jr.*), for respondent-appellee.

Amicus Curiae:

*Moore, Vestrand & Pozehl, P.C.* (by *Joan P. Vestrand*), for State Bar Grievance Committee on Behalf of the State Bar of Michigan.

CAVANAGH, J. This attorney discipline case requires us to decide whether respondent Underwood's delayed petition for review was timely under MCR 9.118(A)(3). That rule directs the Attorney Discipline Board (ADB) to treat the one-year limitation period in MCR 7.205(F) as a guideline, rather than as an absolute deadline. Because we hold that under the circumstances of this case, the ADB did not abuse its discretion in considering respondent's petition despite the one-year "guideline," we must determine the appropriate sanction for Underwood's misconduct. In light of our recent decision in *Grievance Administrator v Lopatin*, 462 Mich 235; 612 NW2d 120 (2000), adopting new guidelines for sanctions in attorney discipline cases, we remand this case for a determination of the appropriate sanction.

I

On July 15, 1991, David Underwood was admitted to the State Bar of Michigan. While he was working as a sole practitioner, two complaints were lodged against him with the Attorney Grievance Commission (AGC). The complaints alleged that Underwood misappropriated the proceeds of a client's worker's compensation award, and that he had failed to pursue another client's cause of action.

In response, the AGC began to investigate the allegations. It sent inquiry letters to Underwood, but he responded only to the letters about the alleged misap-

propriation. The AGC then subpoenaed Underwood to appear before it, but he failed to appear. As a result, Underwood was ordered to show cause why he should not be held in contempt for failing to comply with the subpoena. However, he failed to appear at the show cause hearing.

These events culminated in the AGC filing a formal complaint against Underwood on October 14, 1996. In five counts, the complaint charged Underwood with misappropriating $3,269.76 in client funds, neglecting a client matter, making false statements to the AGC during the investigation, failing to answer letters and comply with the subpoena, and failing to appear at the show cause hearing. Underwood did not respond to the formal complaint, and did not appear at the December 9, 1996, hearing on the complaint. Therefore, a default was entered against him. On February 7, 1997, the ADB entered an order revoking Underwood's license to practice law.

Later that year, Underwood retained counsel to represent him in this disciplinary matter. On November 20, 1997, counsel sent a letter to the ADB requesting it to reconsider its decision and grant a stay of discipline until further judgment. The ADB Executive Director replied, but the content of that reply is not a matter of record.[1] Counsel again contacted the ADB by letter on February 13, 1998, inquiring about the status of the delayed petition for review, which he believed was initiated by the November 20, 1997, letter. On February 16, 1998, the Executive Director again replied, and apologized if he gave counsel the impres-

---

[1] The only information provided to this Court about the response is that the director advised counsel that a petition for review "filed in accordance with MCR 9.118(A)(3)" would be referred to the board's chairperson.

sion that the November 20, 1997, letter would be treated as a delayed petition for review. The Executive Director went on to clarify the filing requirements for a delayed petition for review, and advised that "[u]pon receipt of such a pleading, it will be forwarded to the Board chairperson for consideration in accordance with MCR 9.118(A)(3)."

On March 6, 1998, Underwood filed a formal delayed petition for review. The AGC opposed the petition, arguing that it was untimely because the deadline for filing a delayed petition for review was one year after the revocation order's effective date, which had passed. On April 6, 1998, however, the ADB granted the petition. It noted that through the November 20, 1997 letter, the ADB was on notice that Underwood was seeking review, and that "[u]nder the circumstances, neither the public, the courts, the legal profession [nor] the [AGC] are prejudiced by a delayed review." After considering Underwood's responses to the misconduct charges, the ADB vacated the revocation of Underwood's license, suspended his license for three years, and imposed conditions upon his reinstatement. The AGC appealed the ADB's decision, and this Court granted leave. 461 Mich 1212 (1999).

II

The Michigan Constitution grants to this Court the power to "establish, modify, amend and simplify the practice and procedure in all courts of this state." Const 1963, art 6, § 5. Pursuant to that power, this Court has established rules to regulate and discipline members of the state bar, *In re Schlossberg*, 388 Mich 389, 395; 200 NW2d 219 (1972), which are incorporated into the Michigan Court Rules. Chapter 9.100 of

our rules governs professional disciplinary proceedings, and provides:

> (A) Authority of Board. The Attorney Discipline Board is the adjudicative arm of the Supreme Court for discharge of its exclusive constitutional responsibility to supervise and discipline Michigan attorneys.
>
> *    *    *
>
> (E) Powers and Duties. The board has the power and duty to
>
> *    *    *
>
> (4) on request of the respondent, the administrator, or the complainant, review a final order of discipline or dismissal by a hearing panel . . . . [MCR 9.110.]

The ADB's review of a hearing panel order is governed by MCR 9.118. Generally, petitions for review must be filed within twenty-one days after the hearing panel's order is served, MCR 9.118(A)(1), but delayed petitions for review are permitted under MCR 9.118(A)(3). That subrule provides that "[a] delayed petition for review may be considered by the board chairperson under the guidelines of MCR 7.205(F)." In turn, MCR 7.205(F)(3) provides that "if an application for leave to appeal is filed more than 12 months after entry of the order or judgment on the merits, leave to appeal may not be granted."

A

When called on to construe a court rule, this Court applies the legal principles that govern the construction and application of statutes. *McAuley v General*

*Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). Accordingly, we begin with the plain language of the court rule. When that language is unambiguous, we must enforce the meaning expressed, without further judicial construction or interpretation. See *Tryc v Michigan Veterans' Facility*, 451 Mich 129, 135; 545 NW2d 642 (1996). Similarly, common words must be understood to have their everyday, plain meaning. See MCL 8.3a; MSA 2.212(1); see also *Perez v Keeler Brass Co*, 461 Mich 602, 609; 608 NW2d 45 (2000).

We conclude that the plain language of MCR 9.118(A)(3) provides that MCR 7.205(F)'s one-year limitation period serves as a guide to the ADB's decision to hear a delayed petition, rather than as an unbending rule governing that decision. MCR 9.118(A)(3) provides that when the ADB considers a delayed petition for review, it should do so under the "guidelines" of MCR 7.205(F), which provides for a one-year limitation period. The plain meaning of "guideline" is "an indication or outline of policy or conduct." *Merriam-Webster's Collegiate Dictionary* (10th ed), p 517. Thus, the rule directs the ADB to consider the one-year limitation period as an "outline" or "indication," rather than directing it to consider delayed petitions for review under the "mandate," "regulation," or "stricture" of MCR 7.205.

Indeed, construing MCR 9.118 to simply incorporate the one-year limitation period would be contrary to the canons of construction. The maxim that every word of a court rule should be given meaning, and that courts should not render any part of a court rule surplusage, is well settled. See *In re MCI*, 460 Mich 396, 414; 596 NW2d 164 (1999). If we read MCR 9.118(A)(3) to do nothing more than direct the ADB to

follow the one-year limitation period, the word "guidelines" would become surplusage, because the rule would then effectively provide that "[a] delayed petition for review may be considered by the board chairperson under . . . MCR 7.205(F)." This Court will not ignore this maxim and read "guidelines" out of the court rule. Therefore, although recognizing that MCR 9.118(A)(3) incorporates the one-year limitation period of MCR 7.205(F)(3) as a guiding principle, we acknowledge that it does not set an absolute deadline for delayed petitions for review that must be followed without exception.

B

Because the one-year limitation period is a guide rather than a mandate, the ADB has discretion to hear delayed petitions for review filed later than one year after the hearing panel's order became effective. In determining whether to hear a delayed petition for review, the ADB may take into account myriad relevant equitable considerations. Here, it considered that it had notice of Underwood's intention to file a delayed petition for review, along with whether hearing the delayed petition would be prejudicial to the public, the courts, the legal profession, or the Grievance Administrator. Those are relevant considerations, and were appropriately considered by the ADB. An additional factor favoring the ADB's decision to hear the delayed petition in this case was the Executive Director's first reply to Underwood's counsel, which created confusion about whether Underwood's delayed petition was pending after counsel's Novem-

ber 20, 1997, letter. Thus, the ADB appropriately exercised its discretion under MCR 9.118(A)(3) when it considered Underwood's delayed petition under the guidelines of MCR 7.205(F).

III

Our holding that the ADB was correct to hear Underwood's petition for delayed review requires us to consider the appropriate sanction for his misconduct. As we noted in *Grievance Administrator v Lopatin*, *supra*, Michigan has not historically had a uniform system for determining sanctions in attorney discipline cases. Rather, "[o]nly our occasional opinion has provided guidance to the public, the disciplinary body, and the legal profession . . . ." *Id.* at 238. Otherwise, the AGC and ADB were left to their own designs when imposing sanctions on miscreant attorneys. Because we decided that "a written set of principles will provide guidance during the process of fixing discipline for lawyer misconduct," we directed the ADB and hearing panels to use the American Bar Association Standards for Imposing Lawyer Sanctions until this Court could take final action adopting a uniform system of sanctions. *Id.* at 238-239.

In the wake of our decision in *Lopatin*, rather than initially applying the ABA standards to Underwood's actions ourselves, we remand this case to the ADB for that application. On remand, the ADB is to follow the analytical framework of the ABA standards, first identifying the misconduct involved by considering the ethical duty Underwood breached, his mental state, and the actual or potential injury caused. It then is to

determine the recommended sanction under the ABA standards, and account for any aggravating or mitigating circumstances when it imposes discipline.

IV

For the reasons stated in this opinion, we affirm the ADB's decision to entertain the delayed petition for review. We remand this case to the ADB to determine the appropriate sanction under the ABA standards.

WEAVER, C.J., and KELLY, TAYLOR, CORRIGAN, YOUNG, and MARKMAN, JJ., concurred with CAVANAGH, J.