Gage, P.J.
These consolidated appeals present the question of first impression whether Michigan’s statutory drug forfeiture scheme authorizes that a prevailing claimant be held liable for the charges incurred in the towing and storage of his vehicle during the pen-dency of a drug forfeiture action. The prosecutor appeals as of right from circuit court orders providing that the successful claimants had no liability for towing and storage fees pursuant to the drug forfeiture statutes. We affirm.
i
During the early months of 2000, law enforcement officials separately seized the vehicles involved in this case.
A
In Docket No. 229305, the Wayne County Sheriff seized a 1987 Mercury owned by claimant James Edward Craemer III. The prosecutor’s complaint for a judgment of forfeiture alleged that the vehicle’s seizure occurred on the basis of “probable cause to *535 believe that it was subject to seizure under the narcotics forfeiture laws.” The complaint reflected that the Wayne County Sheriff was holding the Mercury “pending the resolution of this civil in rem forfeiture action.”
A trial regarding the prosecutor’s complaint occurred on May 25, 2000. The circuit court granted claimant’s motion for a directed verdict and entered a judgment dismissing the complaint. Claimant filed a motion for reconsideration with respect to a portion of the judgment of dismissal mandating that he pay $500 in towing and storage charges. According to claimant, the circuit court improperly assessed towing and storage costs against him because the drug forfeiture statutes did not authorize the imposition of these costs on a prevailing claimant.
The prosecutor responded that (1) while MCR 2.625 prevented a nonprevailing party, i.e. the prosecutor, from recovering costs incurred during an action, MCR 2.625 was not implicated in this case because the towing and storage fees were incurred by the towing company, “a remote, private, third-party entity with no connection or control over the litigation” that had “rendered a service . . . pursuant to a contract”; (2) equity and the drug forfeiture statutes vested a court hearing a forfeiture case with “the discretion, post-hearing, to ensure that the ancillary costs such as towing and storage expenses incurred by disinterested parties are paid,” especially in a case in which the officers had reasonable cause to seize the Mercury and the expenses involved were owing to an innocent third party; and (3) the police had the authority, under MCL 257.252d, to tow the Mercury for public safety reasons and because the police had *536 reason to believe that the Mercury had been used in the commission of a crime, specifically the purchase of illegal narcotics.
The circuit court consolidated its ruling regarding the towing and storage expenses in Docket No. 229305 with its ruling addressing the expenses in Docket No. 229307.
B
In Docket No. 229307, the Detroit Police Department seized the 1996 Jeep owned by claimant Nichole Loch on the basis of probable cause to believe that it likewise was subject to seizure under the drug forfeiture laws. The prosecutor alleged that the Jeep’s driver, Jack Barrett II, approached an undercover officer and asked for a bag of weed. The police arrested Barrett for disorderly conduct.
Claimant responded to the prosecutor’s complaint seeking forfeiture that MCL 333.7521(d)(iii) specifically exempted from seizure and forfeiture vehicles involved in marijuana-related offenses. Following claimant’s failure to appear for an expedited trial, the court entered a default judgment against her, but shortly thereafter granted claimant’s motion to set aside the judgment. After a June 22, 2000, trial, the circuit court dismissed the prosecutor’s complaint, but provided that claimant should pay $600 in towing and storage costs. Claimant sought reconsideration of the court’s order with respect to towdng and storage fees.
*537 c
On July 11, 2000, the circuit court held a hearing addressing the liability of both successful claimants for the towing and storage fees of their vehicles. The court expressed some uneasiness regarding its ruling, but ultimately concluded that the drug forfeiture statutes did not authorize the imposition of towing and storage fees on prevailing claimants. The court reasoned as follows:
The whole statutory scheme set up to deal with forfeiture is extensive and almost exhaustive, and it gives the Court the authority specifically to order these payments by a claimant who loses.
The authority is given by statute.
A similar authority is not given to assess costs against a prevailing claimant. I mean, when the statutory scheme is this complete, and it indicates that you had authority to order a losing claimant to pay, but doesn’t give the authority for a prevailing claimant to pay, I don’t think the language that I cited, or arguments of equity come into play under these circumstances.
... I am not happy with this ruling. I think this ruling has potentially dire public consequences, public policy consequences, because . . . the Prosecutor has an obligation under the law to pursue these matters, and they, in effect, would become a guarantor of victory, or would attempt to do that in bringing these cases, even when they have clear probable cause to seize the vehicle.
That’s why I’m uncomfortable with this ruling, but I don’t think I’ve got the authority to do it. I certainly would indicate that an appeal of this Court’s order is in order without - question.
*538 On August 1, 2000, the court entered separate but similar orders dismissing each case, granting claimants’ motions for reconsideration regarding towing and storage costs, and ordering that claimants had no liability for any applicable towing and storage fees.
n
The prosecutor challenges the circuit court’s interpretation of the drug forfeiture scheme by making several arguments in support of the circuit court’s authority to assess towing and storage costs against a prevailing claimant. We review de novo the legal questions raised by the prosecutor, which include issues of equity and statutory interpretation. Little v Kin, 249 Mich App 502, 507; 644 NW2d 375 (2002); Saginaw Co v John Sexton Corp of Michigan, 232 Mich App 202, 214; 591 NW2d 52 (1998).
A
When presented with questions of statutory interpretation, a court’s obligation is to discern and give effect to the Legislature’s intent as expressed in the words of the statute. Pohutski v Allen Park, 465 Mich 675, 683; 641 NW2d 219 (2002). This Court begins a statutory construction analysis by consulting the specific statutory language at issue. In re MCI Telecommunications Complaint, 460 Mich 396, 411; 596 NW2d 164 (1999).
We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature’s intent only if the statutory language is ambiguous. Where the language is unambiguous, “we presume that the Legislature intended the meaning clearly expressed—no fur *539 ther judicial construction is required or permitted, and the statute must be enforced as -written.” [Pohutski, supra at 683 (citations omitted).]
See also In re MCI, supra.
B
The circuit court correctly observed that a comprehensive statutory scheme within the controlled substances act, MCL 333.7101 et seq., governs drug forfeiture proceedings. Section 7521 describes the various types of property subject to forfeiture, including vehicles “used or intended for use, to transport, or in any manner to facilitate the transportation, for the purpose of sale or receipt of” illegal controlled substances and other items related to illicit drug manufacture and trafficking. MCL 333.7521(d). Section 7522 provides for a law enforcement unit’s seizure of property made subject to forfeiture under 7521. A “circuit court having jurisdiction over the property” may issue process authorizing seizure, or property may be seized absent process under the following circumstances:
(a) Incident to a lawful arrest, pursuant to a search warrant, or pursuant to an inspection under an administrative inspection warrant.
(b) The property is the subject of a prior judgment in favor of this state in an injunction or forfeiture proceeding under this article or pursuant to section 17766a.
(c) There is probable cause to believe that the property is directly or indirectly dangerous to health or safety.
(d) There is probable cause to believe that the property was used or is intended to be used in violation of this article or section 17766a. [MCL 333.7522 (emphasis added).]
*540 Section 7523 governs the conduct of forfeiture proceedings. In cases involving seizure without process, the unit of government that performed the property seizure must provide the property owner written notice of the seizure and the governmental unit’s intent “to forfeit and dispose of the property.” MCL 333.7523(l)(a). A person who claims an interest in the seized property has twenty days after receiving notice to file a claim describing his interest. MCL 333.7523(l)(c). A claimant must give to the governmental unit that seized the property a bond amounting to ten percent of the seized property’s value, “but not less than $250.00 or greater than $5000.00,” subject to the condition “that if the property is ordered forfeited by the court the obligor shall pay all costs and expenses of the forfeiture proceedings.” Id. Forfeiture proceedings must commence promptly following expiration of the twenty-day claim period. Id. Seized property “shall not be subject to an action to recover personal property, but is deemed to be in the custody of the seizing agency subject only to this section or an order and judgment of the court having jurisdiction over the forfeiture proceedings.” MCL 333.7523(2).
Section 7524 addresses the disposition of forfeited property. Once forfeiture occurs, the governmental unit that seized the property has several options to dispose of the property, which include keeping the property for official use and selling whatever property the law does not require to be destroyed and “is not harmful to the public.” MCL 333.7524(l)(a) and (b).[1] *541 The governmental unit must direct proceeds from the sale of forfeited property to “the treasurer of the entity having budgetary authority over the seizing agency,” which must apply the proceeds as follows:
(i) For the payment of proper expenses of the proceedings for forfeiture and sale, including expenses incurred during the seizure process, maintenance of custody, advertising, and court costs, except as otherwise provided in subsection (4).
(ii) The balance remaining after the payment of expenses shall be distributed by the court having jurisdiction over the forfeiture proceedings to the treasurer of the entity having budgetary authority over the seizing agency. . . . The money received under this subparagraph and all interest and other earnings on money received under this subparagraph shall be used to enhance law enforcement efforts pertaining to this article or section 17766a .... [MCL 333.7524(l)(b).]
Pursuant to subsection 7524(4), and apparently in lieu of requiring the application of proceeds from the sale of forfeited property to pay forfeiture proceeding expenses pursuant to MCL 333.7524(l)(b)(i), a court that enters a forfeiture order “may order a person who claimed an interest in the forfeited property pursuant to section 7523(l)(c) to pay the expenses of the proceedings of forfeiture to the entity having budgetary authority over the seizing agency.”
c
In accordance with the well-established rules of statutory interpretation, we begin our analysis by emphasizing the fact that the statutory drug forfeiture *542 scheme discussed above simply lacks any provision even suggesting that a prevailing claimant should bear responsibility for towing and storage fees incurred with respect to an ultimately unsuccessful forfeiture action. A review of the drug forfeiture statutes offers a strong indication to the contrary that the Legislature intended to insulate prevailing claimants from paying towing and storage costs. The Legislature included several provisions addressing the payment of forfeiture-related expenses following a successful forfeiture action: (1) Subsection 7523(l)(c) explains that the bond given by a claimant must be “conditioned that if the property is ordered forfeited by the court the obligor shall pay all costs and expenses of the forfeiture proceedings” (emphasis added), (2) subsection 7524(l)(b)(i) demands that when a court orders forfeiture of property, the governmental unit that seized the property must first apply the proceeds of its sale towards the expenses of the forfeiture proceedings, and (3) subsection 7524(4) plainly sets forth that “[i]f a court enters an order of forfeiture, the court may order” that the unsuccessful claimant pay for the expenses of the forfeiture proceedings. (Emphasis added.) The fact that the Legislature specifically considered the assessment of drug forfeiture expenses against claimants, yet explicitly chose to impose the assessment against only one limited class of claimants, specifically losing claimants, strongly signals that the Legislature rejected the notion that a prevailing claimant should suffer the expenses occasioned by a prosecutor’s initiation of an ultimately unsuccessful forfeiture action. See Stokes v Millen Roofing Co, 245 Mich App 44, 60; 627 NW2d 16 (2001) (observing that the Legislature is presumed to be aware of the consequences of the use or omission of *543 language when it enacts laws), rev’d on other grounds 466 Mich 660; 649 NW2d 371 (2002); Alcona Co v Wolverine Environmental Production, Inc, 233 Mich App 238, 247; 590 NW2d 586 (1998) (“In examining the plain language of a statute, the maxim . . . the expression of one thing is the exclusion of another, means that the express mention of one thing in a statute implies the exclusion of other similar things.”); see also Farrington v Total Petroleum, Inc, 442 Mich 201, 210; 501 NW2d 76 (1993) (“Courts cannot assume that the Legislature inadvertently omitted from one [portion of a] statute the language that it placed in another statute, and then, on the basis of that assumption, apply what is not there.”).
“A court must not judicially legislate by adding into a statute provisions that the Legislature did not include.” In re Wayne Co Prosecutor, 232 Mich App 482, 486; 591 NW2d 359 (1998). Because the Legislature plainly did not authorize within the statutory drug forfeiture scheme the imposition of towing and storage fees on a successful claimant, we simply will not judicially legislate such a provision ourselves. Pohutski, supra (observing that courts cannot speculate regarding an unstated purpose where unambiguous text plainly reflects the Legislature’s intent); Far-rington, supra at 210 (noting that “this Court may not do on its own accord what the Legislature has seen fit not to do”); Stokes, supra (declining to read into a statute an exception that the Legislature did not see fit to include).
D
We decline the prosecutor’s invitation to read into the statutory scheme an equitable exception, which *544 would permit a circuit court to assess against prevailing claimants the towing and storage charges incurred during an unsuccessful forfeiture action, in situations where the governmental unit had probable cause to seize the property. The prosecutor cites In re Forfeiture of $30,632.41, 184 Mich App 677; 459 NW2d 99 (1990), for the proposition that this Court may resort to equity to remedy an unfair result. In In re Forfeiture of $30,632.41, this Court affirmed a circuit court’s award of interest on money recovered by a prevailing forfeiture claimant. This Court explained that although the “forfeiture statute is silent on the issue of interest,” the circuit court properly exercised its powers of equity to prevent the plaintiff from obtaining a windfall. Id. at 679. We find the instant case distinguishable, however, because, as we emphasized above, the Legislature did not offer only silence with respect to a claimant’s liability for forfeiture expenses. The Legislature apparently considered the question of claimant liability and ultimately limited liability for forfeiture expenses to losing claimants only.
Moreover, we do not agree with the prosecutor’s characterization of the instant claimants as having “dirty hands.” Due to no apparent wrongdoing on their part, claimants endured the inconvenience of losing the use of their vehicles for several months before finalization of the unsuccessful forfeiture proceedings, and the inconvenience and expense involved in contesting the forfeiture proceedings. After law enforcement agencies seized their vehicles, claimants remained the owners of these vehicles. In re Forfeiture of $176,598, 465 Mich 382, 387-388; 633 NW2d 367 (2001). Accordingly, during the periods that their vehicles were held in the custody of the *545 governmental agencies that seized them, claimants remained obligated to pay the expenses associated with vehicle ownership, such as lease or loan payments and insurance premiums. Under these circumstances, we do not view as inequitable the fact that the instant claimants were protected from further enduring the towing and storage fees incurred during the unsuccessful forfeiture actions, irrespective that law enforcement may have possessed probable cause to believe that claimants’ vehicles were subject to seizure.[2]
Furthermore, we do not find persuasive the prosecutor’s references to the unfairness that a grant of immunity to prevailing forfeiture claimants would visit on the innocent third party towing companies who have provided their services. The circuit court expressed its skepticism of this claim by observing at the hearing that “the citizens of the County of Wayne would be paying through your office,” to which the prosecutor responded that “in some situations I know that the seizing agency has a contract with the towing and storage company.” The prosecutor also acknowledged in Docket No. 229305, in a memorandum responding to claimant Craemer’s motion for reconsideration, that the towing and storage fees represented “an expense incurred by Mayflower Towing, an [sic] private, third-party company which contracts *546 with the Canton Police Department to service the department’s vehicle towing and storage needs.”[3]
E
We additionally note that the prosecutor failed to provide persuasive authority undermining our interpretation of the drug forfeiture statutes. The prosecutor cited Cefalu v Elk Grove, 211 F3d 416 (CA 7, 2000), for the proposition that even though a statute or court rule might address the propriety of awarding a particular cost incurred by the prevailing party, a court nonetheless possesses equitable authority to deny reimbursement. No parallel exists, however, between Cefalu and the instant case. In Cefalu, the defendants, who prevailed at trial, cross appealed the district court’s refusal to award them certain costs pursuant to FR Civ P 54(d). The Seventh Circuit Court of Appeals concluded that the costs sought by the prevailing defendants fell into a category of costs authorized by statute, but that the district court did not abuse its discretion in denying reimbursement because “Rule 54(d) makes quite clear that although there is a presumption in favor of a cost award to the prevailing party, the district court retains the discretion to direct otherwise.” Cefalu, supra at 429. Cefalu involved a distinct court rule that, unlike Michigan’s drug forfeiture statutes, specifically authorized the district court’s exercise of discretion with respect to the prevailing party’s costs.
*547 The prosecutor also attempted to equate the instant case with Breath v Cronvich, 729 F2d 1006 (CA 5, 1984), which “revolve[d] around the practice in Jefferson Parish [Louisiana] of towing and impounding illegally-parked vehicles and assessing towing and storage fees before the vehicles are released to their owners.” Id. at 1008. The Fifth Circuit Court of Appeals held that Louisiana’s statutory towing and impoundment scheme comported with procedural due process requirements because the owners of towed vehicles were afforded the opportunity to regain possession of their vehicles pending a hearing by posting an appearance bond and the right to a hearing on the validity of their parking tickets. Id. at 1011-1012. Contrary to the prosecutor’s suggestion, Breath simply does not stand for the proposition that in every case a governmental unit may assess towing and storage fees against a vehicle owner whose vehicle was towed.
We lastly address the prosecutor’s contention that the legislative intent reflected within MCL 257.252d supports the imposition of towing and storage fees on prevailing claimants in a drug forfeiture action. According to subsection 252d(l), the police “may provide for the immediate removal of a vehicle from public or private property ... at the expense of the registered owner” in several circumstances, including when reasonable cause exists “to believe that the vehicle was used in the commission of a crime.” Subsection 252d(l)(e). We note with respect to the prosecutor’s argument, however, that MCL 257.252d, a provision located within a special antitheft subdivision of Chapter II of the Michigan Vehicle Code, MCL 257.1 et seq., has no application in this case because we find no indication in the record that claimants’ vehicles were towed pursuant to MCL 257.252d. The *548 prosecutor’s complaints mentioned only drug forfeiture provisions located within Article 7 of the Public Health Code.[4]
m
Because the drug forfeiture statutes plainly do not authorize the assessment of towing and storage costs against prevailing claimants in a drug forfeiture action, we conclude that the circuit court correctly ordered that claimants had no responsibility for towing and storage fees.
Affirmed.

 The governmental unit that seized the property also may require an administrator “to take custody of the property and remove it for disposi *541 tion in accordance with law,” MCL 333.7524(l)(c), or “[fjorward it to the bureau for disposition.” MCL 333.7524(l)(d).

 We note our failure to comprehend why claimant Loch declined an expedited trial in her case or claimants’ “insistence that the charges fall within the loose general rule of prevailing party not paying costs” should tip the scales of equity against claimants, as the prosecutor argues. Our review of the lower court records reveals that neither claimant engaged in undue delay of the proceedings or advanced any frivolous legal position.

 The prosecutor attached to its memorandum the affidavit of Thomas Rey, manager of Mayflower Towing, who similarly averred that the towing company, “as a private company, has a contract with the Canton Police Department to handle its vehicle and towing matters.”

 Moreover, even attempting to follow the prosecutor’s analogy, we do not find MCL 257.252d a persuasive basis for the prosecutor’s conclusion that a successful claimant in a drug forfeiture action should bear responsibility for towing and storage fees. Subsection 252d(3) permits a registered owner to request a hearing regarding the propriety of the removal of his vehicle and “the reasonableness of the towing fees and daily storage fees.” “If the court finds that the vehicle was not properly removed, the police agency shall reimburse the owner of the vehicle for the accrued towing and storage fees.” Id. (emphasis added).