COSTA v COMMUNITY EMERGENCY MEDICAL SERVICES, INC

Docket Nos. 247983, 248104. Submitted June 1, 2004, at Detroit. Decided September 21, 2004, at 9:00 A.M.

Richard Costa and Cindy Costa brought an action in the Wayne Circuit Court against Community Emergency Medical Services, Inc. (CEMS), Dave Henshaw and Scott Meister (emergency medical services [EMS] employees of CEMS), and Donald Farenger and Lisa Schultz (EMS employees of the city of Taylor fire department). The plaintiffs alleged that the defendants were grossly negligent in treating Richard Costa. CEMS and its two EMS employees moved for summary disposition on the basis of their claims of emergency medical service provider immunity pursuant to MCL 333.20901 *et seq.* Farenger and Schultz moved for summary disposition, asserting that they were entitled to governmental immunity. The plaintiffs also moved for summary disposition with respect to Farenger and Schultz, asserting that those defendants failed to file statutorily required affidavits stating that they possessed meritorious defenses to the complaint thereby entitling the plaintiffs to summary disposition on the issues of gross negligence and proximate cause. The court, John H. Gillis, Jr., J., denied the defendants' motions for summary disposition based on a finding that there were material issues of fact on the question of immunity. The court also denied the plaintiffs' motion for summary disposition. Schultz appealed as of right, and defendant Farenger cross-appealed. CEMS and its EMS employees appealed by leave granted from the trial court's order denying their motions for summary disposition. The plaintiffs filed cross-appeals that challenged the trial court's denial of their motion for summary disposition in which they asserted Farenger and Schultz's failure to file statutorily required affidavits. In response, Farenger and Schultz filed a motion to dismiss the plaintiffs' cross-appeal concerning Farenger and Schultz, asserting that the cross-appeal exceeded the scope of that portion of the order Farenger and Schultz appealed from—the trial court's denial of their motion claiming governmental immunity. After consolidating the appeals, the Court of Appeals, TALBOT, P.J., WHITE and WILDER, JJ., denied the motion to dismiss the plaintiffs' cross-appeal and deferred a decision on the jurisdictional question raised in Farenger and Schultz's motion to dismiss.

The Court of Appeals *held*:

1. The trial court improperly denied Farenger and Schultz's motions for summary disposition on their claims of governmental immunity. There is no dispute that they were acting within the scope of their authority while engaged in the exercise of a governmental function, and the plaintiffs' claim that their actions were grossly negligent and proximately caused Costa's injury, MCL 691.1407(2), is not supported by the allegations in the complaint or by the evidence. Plaintiffs' allegations that these defendants failed to assess Costa's vital signs, conduct a physical examination of him, properly assess his competence to refuse treatment, and transport him to a hospital sound in ordinary negligence only. Moreover, the record evidence indicates that these defendants were not told the truth about the circumstances that caused Costa's injury, that upon regaining consciousness Costa answered correctly a series of questions designed to gauge his competence and mental capacity, that he appeared competent to refuse treatment, signed a form refusing treatment, and walked into a hotel where he was staying. Consequently, no reasonable juror could find that these defendants acted so recklessly as to demonstrate a substantial lack of concern for whether an injury results. In addition, no reasonable juror could find that Farenger and Schultz were the proximate cause of Costa's injury where the undisputed evidence established that Costa's business associate punched him and resulted in Costa falling and hitting his head on the pavement.

2. The trial court improperly denied CEMS and its EMS employees' motions for summary disposition on their claim of qualified emergency service provider immunity. Under the emergency medical services act (EMSA), MCL 333.20901 *et seq.*, these defendants are not liable for services provided absent gross negligence or willful misconduct. MCL 333.20965(1). EMSA and the governmental immunity act are read in pari materia. Because the plaintiffs rely on the same allegations used in their complaint against Farenger and Schultz, which sound only in ordinary negligence, the allegations do not allege gross negligence or willful conduct needed to overcome EMSA immunity.

3. The trial court did not improperly deny the plaintiffs' motion for summary disposition on their claim that Farenger and Schultz failed to file statutorily required affidavits of meritorious defense. There was no abuse of discretion by the trial court when it granted the defendants an extension to file the required affidavits.

4. The jurisdictional question raised by Farenger and Schultz in their motion to dismiss the plaintiffs' cross-appeal, although

moot, is subject to review because it is likely to recur yet evade judicial review. The Court's jurisdiction, as prescribed by the Supreme Court, regarding appeals as of right is limited to the portion of the order with respect to which there is an appeal of right, and encompasses as a category of a "final" judgment certain nonfinal orders, including appeals from orders ruling on the issue of governmental immunity. MCR 7.202(6)(a)(v) and 7.203(A)(1). However, cross-appeals are not similarly limited. MCR 7.207(A)(1). Under MCR 7.207, cross-appellants may challenge whatever legal rulings or other perceived improprieties that occurred during the trial court proceedings. Therefore, there is no basis for the defendants' claim that the Court lacks jurisdiction to consider the plaintiffs' argument on cross-appeal.

Affirmed in part and reversed in part.

BORRELLO, J., concurring in part and dissenting in part, agreed with that part of the majority's holding that the trial court committed error requiring reversal when it denied the defendants' motions for summary disposition, but disagreed with the majority's attempt to enlarge the scope of the Court's jurisdiction. The majority incorrectly seeks to eliminate the distinctions between a motion brought under MCR 2.116(C)(7) and one under MCR 2.117(C)(10). Where the trial court denied the defendants' motions on the basis of its finding genuine issues of material fact regarding whether the defendants were entitled to governmental immunity and thus did not make a legal determination whether the defendants were entitled to immunity, that is a determination under MCR 2.117(C)(10). The defendants cannot file a claim of appeal from such an order because it is not a final order under MCR 7.202(6)(a)(v) and MCR 7.203(A)(1). Rather, the defendants are required to file an application for leave to appeal.

*Mark Granzotto, P.C.* (by *Mark Granzotto*), and *Gleicher & Patek, P.C.* (by *Barbara A. Patek*), for the plaintiffs.

*Galbraith & Booms* (by *Steven B. Galbraith*) for Community Emergency Medical Services, Inc.; Dave Henshaw; and Scott Meister.

*Secrest, Wardle, Lynch, Hampton, Truex and Morley, P.C.* (by *Janet Callahan Barnes*), for Lisa Schultz and Donald Farenger.

Before: SAAD, P.J., and TALBOT and BORRELLO, JJ.

TALBOT, J. These consolidated and expedited appeals stem from the trial court's denial of defendants' motions for summary disposition in plaintiffs Richard and Cindy Costa's[1] medical malpractice action. We affirm in part and reverse in part.

In Docket No. 247983, city of Taylor Fire Department emergency medical service (EMS) employee and defendant Lisa M. Schultz appeals as of right the April 7, 2003, order denying her motion for summary disposition premised on governmental immunity. MCR 7.202(6)(a)(v); MCR 7.203(A)(1). Pursuant to MCR 7.207(A)(2), city of Taylor Fire Department emergency medical service employee and defendant Donald Farenger filed a claim of cross-appeal from the same order, which also denied his motion for summary disposition premised on governmental immunity.

Plaintiffs also filed a cross-appeal in Docket No. 247983, challenging the circuit court's denial of their motion for summary disposition, a motion based on Farenger and Schultz's failure to file statutorily required affidavits that they possessed meritorious defenses to the complaint. Farenger and Schultz responded with a motion to dismiss plaintiffs' cross-appeal for lack of jurisdiction on the basis that the scope of the cross-appeal exceeded the limited portion of the order from which Farenger and Schultz appealed, namely, the circuit court's denial of their motion for summary disposition premised on governmental immunity. On July 14, 2003, this Court denied Farenger and Schultz's motion to dismiss, and deferred a decision of the jurisdictional question.

---

[1] Because Cindy Costa's claims are derivative of the injuries suffered by her husband Richard Costa, subsequent references to "Costa" will refer solely to Richard.

In Docket No. 248104, defendants Community Emergency Medical Services, Inc. (CEMS), and CEMS employees Dave Henshaw and Scott Meister appeal by leave granted the same circuit court order, which denied their motion for summary disposition on the issue of emergency medical service provider immunity. Plaintiffs filed a cross-appeal in Docket No. 248104, in which they again challenged the circuit court's denial of their motion for summary disposition based on Farenger and Schultz's failure to file affidavits of meritorious defenses.

According to plaintiffs' complaint, on August 2, 1999, Richard Costa and his coworker, Joe Baker, flew from Colorado to Detroit for a business meeting. Sometime late on August 2 or early on August 3, Baker and Costa became involved in a fight and Baker struck Costa, "causing him to fall backwards and strike his head on the pavement." At 1:18 A.M. on August 3, a woman called the Taylor Police Department and reported that a man was down and not moving, and that she did not know whether he was alive. Within approximately five minutes, defendants arrived at the hotel parking lot in response to the report, but by this time "Costa had been moved from his prone position on the pavement to the front passenger seat of his vehicle, but was still unconscious." Baker advised defendants that Costa, who did not respond initially to painful or verbal stimuli, had two to four drinks earlier that evening. According to plaintiffs, Baker also informed defendants that he had punched Costa once, "and that [Costa] had been knocked unconscious either by the punch or when he struck his head on the concrete pavement as he fell." Costa regained consciousness, and recalled his name, location, and reason for going to Detroit, but could not recall the altercation and had difficulty walking unassisted. Costa signed a form refusing medical treatment

and returned, assisted by Baker, to his hotel room. Baker was unable to awaken Costa the next morning, and Costa later required an emergency craniotomy and sustained allegedly permanent damage.

In Docket No. 247983, defendants Farenger and Schultz argue on appeal that the trial court improperly denied summary disposition upon their claim of governmental immunity where plaintiffs did not present any allegations or evidence tending to establish defendants' gross negligence in treating Costa. We agree. This Court reviews de novo a circuit court's summary disposition ruling. *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003). Farenger and Schultz's claim of entitlement to governmental immunity derive from MCL 691.1407(2), which provides that governmental employees are immune from tort liability if all of the following are met:

> (a) The officer, employee, member, or volunteer is acting or reasonably believes he or she is acting within the scope of his or her authority.
>
> (b) The governmental agency is engaged in the exercise or discharge of a governmental function.
>
> (c) The officer's . . . [or] employee's . . . conduct does not amount to gross negligence that is the proximate cause of the injury or damage. As used in this subdivision, "gross negligence" means conduct so reckless as to demonstrate a substantial lack of concern for whether an injury results.

Here, plaintiffs do not dispute that Farenger and Schultz's treatment of Costa was an act within the scope of their authority as EMS personnel with the Taylor Fire Department, and that the Taylor Fire Department's response to the distress call involving medical treatment for Costa constituted engagement in a discharge of a governmental function. MCL 691.1407(2)(a)-(b). The remaining issue is whether,

assuming the veracity of plaintiffs' allegations, they state a claim for gross negligence by Farenger and Schultz that was the proximate cause of Costa's injury. We conclude that they do not.

"[E]vidence of ordinary negligence does not create a material question of fact concerning gross negligence." *Maiden v Rozwood*, 461 Mich 109, 122-123; 597 NW2d 817 (1999). "The plain language of the governmental immunity statute indicates that the Legislature limited employee liability to situations where the contested conduct was substantially more than negligent." *Id.* at 122. The Legislature also provided immunity unless the employee's conduct amounts to " 'the one most immediate, efficient, and direct cause of the injury or damage, i.e., the proximate cause.' " *Robinson v Detroit*, 462 Mich 439, 462; 613 NW2d 307 (2000), quoting *Stoll v Laubengayer*, 174 Mich 701, 706; 140 NW 532 (1913).

Plaintiffs alleged that defendants Farenger and Schultz failed (1) to assess Costa's vital signs; (2) to conduct a physical examination of Costa while he remained unconscious; (3) on Costa's regaining of consciousness, to properly assess his competence to refuse treatment; (4) to explain to Costa the potential consequences of his refusal of treatment; and (5) to transport Costa to a hospital. Farenger and Schultz arrived on the scene after receiving dispatch information about a man lying unconscious in a parking lot. When they arrived, within four minutes of the dispatch, they found Costa reclined in the passenger seat of a vehicle. Costa's coworker, Baker, adamantly denied that Costa had ever lain on the ground, but admitted that Costa became unconscious after Baker punched him in the face. Baker believed that Costa had ingested four scotch and waters, but Farenger did not smell alcohol emanating from

Costa. Farenger and Schultz observed a small spot of blood on one of Costa's nostrils. Although Costa did not immediately respond to Farenger's voice or to a painful stimulus, he became coherent after an ammonia inhalant was placed under his nose and correctly answered a series of questions to gauge his level of consciousness and mental capacity. Costa appeared competent to refuse treatment, signed a form refusing further treatment, and walked into the hotel where he was staying.

Despite plaintiffs' references in their complaint to "gross negligence," we find that the allegations here sound only in ordinary negligence. See *Smith v Stolberg*, 231 Mich App 256, 258; 586 NW2d 103 (1998). No reasonable juror could have found that Farenger and Schultz behaved so recklessly "as to demonstrate a substantial lack of concern for whether an injury results." MCL 691.1407(2)(c); *Tarlea v Crabtree*, 263 Mich App 80; 687 NW2d 333 (2004.) Further, given the undisputed evidence that Baker punched Costa in the face and knocked him down before Farenger and Schultz arrived on the scene, reasonable jurors could not have found that Farenger and Schultz's actions were the proximate cause of Costa's injuries. *Robinson, supra,* 462 Mich 463; *Tarlea, supra*. The trial court improperly denied Farenger and Schultz's motion for summary disposition on the issue of governmental immunity.

In Docket No. 248104, defendants CEMS and CEMS employees Dave Henshaw and Scott Meister also argue that the trial court improperly denied summary disposition because they were entitled to qualified immunity and plaintiffs failed to establish gross negligence or proximate cause. Again, plaintiffs alleged that the CEMS defendants failed (1) to assess Costa's vital signs; (2) to conduct a physical examination of Costa while he re-

mained unconscious; (3) on Costa's regaining of consciousness, to properly assess his competence to refuse treatment; (4) to explain to Costa the potential consequences of his refusal of treatment; and (5) to transport Costa to a hospital. Under the emergency medical services act (EMSA), MCL 333.20901 *et seq.*, emergency medical technicians and paramedics are not liable for services they provide absent gross negligence or willful misconduct. MCL 333.20965(1). EMSA and the governmental immunity act are read "in pari materia," and gross negligence is defined the same in each, as "conduct so reckless as to demonstrate a substantial lack of concern for whether injury results." MCL 691.1407(2)(c); *Jennings v Southwood,* 446 Mich 125, 136-137; 521 NW2d 230 (1994). The CEMS defendants arrived on the scene at a later time than defendants Schultz and Farenger, and supplied the ammonia inhalant that revived Costa to consciousness. Again, despite plaintiffs' references in their complaint to "gross negligence," the allegations here sound only in ordinary negligence and do not allege the gross negligence or wilful misconduct needed to overcome EMSA immunity. *Tarlea, supra; Smith, supra; Pavlov v Community Emergency Med Service, Inc,* 195 Mich App 711, 713-717; 491 NW2d 874 (1992).

In both Docket Nos. 247983 and 248104, plaintiffs argue on cross-appeal that the trial court erred in denying their motion for summary disposition or default, which was based on Farenger and Schultz's failure to comply with the statutory requirement to file an affidavit of meritorious defense, MCL 600.2912e. This Court has more than once rejected similar assertions that a medical malpractice defendant's failure to file an affidavit of meritorious defense pursuant to MCL 600.2912e mandates a default or other preclusion of the defendant from presenting a defense, and plaintiffs

present no authority to the contrary. *Kowalski v Fiutowski*, 247 Mich App 156, 161-163, 165-166; 635 NW2d 502 (2001); *Wilhelm v Mustafa*, 243 Mich App 478, 483-486; 624 NW2d 435 (2000). Here, the trial court gave Schultz and Farenger additional time to file their affidavits, and we find no abuse of discretion. *Id.*

In Docket No. 247983, defendants Farenger and Schultz respond that this Court lacks jurisdiction to consider plaintiffs' cross-appeal because the trial court's denial of plaintiffs' motion is not a final order as defined in MCR 7.202(6)(a)(iii)-(v).[2] Although our ruling on the previous issue makes moot the jurisdictional question raised by defendants Farenger and Schultz, this Court may address an issue where, as here, it is likely to recur yet evade judicial review. *In re Martin*, 237 Mich App 253, 254; 602 NW2d 630 (1999).

The jurisdiction of the Court of Appeals is provided by law, and its practice and procedure are prescribed by the court rules and our Supreme Court. Const 1963, art 6, § 10. See MCR 7.202(6) and 7.203. Unlike that of our Supreme Court or the circuit court, the jurisdiction of this Court is "entirely statutory," *People v Milton*, 393 Mich 234, 245; 224 NW2d 266 (1974), and is generally limited to final judgments and orders. MCL 600.308. In its exercise of prescribing this Court's practice and procedure, our Supreme Court has limited appeals as of right "to the portion of the order with respect to which there is an appeal of right," and has determined that a "final" judgment or order includes certain nonfinal orders, including appeals from orders ruling on the issue of governmental immunity. MCR 7.202(6)(a)(v). We acknowledge this Court's decision in *Newton v State Police*, 263 Mich App 251; 688 NW2d 94 (2004). We

---

[2] Plaintiffs note that they filed cross-appeals in both cases specifically to avoid the jurisdictional question.

disagree with *Newton* because we believe that the potential of immunity is at the core of virtually any case involving a governmental party, MCR 7.215(J), and that, regardless of the specific basis supporting the trial court's ruling on a motion for summary disposition, whenever the effect is to deny a defendant's claim of immunity, the trial court's decision is, in fact, "an order denying governmental immunity" that should be reviewable under MCR 7.203(A).[3] MCR 7.202(6)(a)(v). The decision in *Newton* is not necessary to our analysis here, however, as it did not address the ability to cross-appeal from orders defined by MCR 7.202(6)(a)(iii)-(v), i.e., orders that are nonfinal except by definition of that rule.

This Court considers de novo jurisdictional questions. *Jeffrey v Rapid American Corp*, 448 Mich 178, 184; 529 NW2d 644 (1995). The rules of statutory construction apply to court rules. *Grievance Administrator v Underwood*, 462 Mich 188, 193; 612 NW2d 116 (2000).

> When faced with questions of statutory interpretation, our obligation is to discern and give effect to the Legislature's intent as expressed in the words of the statute. We give the words of a statute their plain and ordinary meaning, looking outside the statute to ascertain the Legislature's intent only if the statutory language is ambiguous. Where the language is unambiguous, " 'we presume that the Legislature intended the meaning clearly expressed—no further judicial construction is required or permitted, and the statute must be enforced as written.' " [*Pohutski v City of Allen Park*, 465 Mich 675, 683; 641 NW2d 219 (2002) (citations omitted).]

---

[3] We note that the court rule contains an error. MCR 7.203 states that this Court has jurisdiction over final judgments as defined in MCR 7.202(7). In May 2004, MCR 7.202 was renumbered and MCR 7.202(7) was changed to MCR 7.202(6), but MCR 7.203 has not yet been revised to reflect that change.

If a court rule is unambiguous, it must be enforced without further judicial construction. *In re KH*, 469 Mich 621, 628; 677 NW2d 800 (2004). This Court will not "read in" language that is not included in the court rule. See *In re Forfeiture of 1987 Mercury*, 252 Mich App 533, 543; 652 NW2d 675 (2002).

MCR 7.203(A)(1) explicitly prescribes the scope of an appellant's appeal as of right from a final order under MCR 7.202(6)(a)(iii)-(v), such as an order denying summary disposition on the issue of governmental immunity, and limits an appellant's right to appeal under these circumstances "to the portion of the order with respect to which there is an appeal as of right." Here, Farenger and Schultz indisputedly filed their claim of appeal from the portion of the circuit court order that denied their motions for summary disposition in which they claimed governmental immunity. As Farenger and Schultz argue, the circuit court's denial of their governmental immunity-based motions plainly qualifies as a "final order" pursuant to MCR 7.202(6)(a)(v), from which MCR 7.203(A)(1) plainly authorized Farenger and Schultz to appeal as of right.[4]

But the court rules do not similarly restrict the scope of cross-appeals. MCR 7.207(A)(1) provides:

> When an appeal of right is filed or the court grants leave to appeal any appellee may file a cross appeal.

Unlike MCR 7.202(6)(a)(iii)-(v) and MCR 7.203(A), the court rule governing cross-appeals to this Court, MCR 7.207, does not contain any language of limitation. Instead, the clear and unambiguous terms of MCR 7.207(A)(1) authorize any appellee to file a cross-appeal

---

[4] As noted, although not at issue here, we disagree with this Court's decision in *Newton v State Police*, 263 Mich App 251; 688 NW2d 94 (2004), regarding the interpretation of the court rule. MCR 7.215(J).

whenever an appellant has either filed an appeal as of right, or when this Court has granted an appellant's application for leave to appeal.[5] The language of MCR 7.207 does not restrict a cross-appellant from challenging whatever legal rulings or other perceived improprieties occurred during the trial court proceedings. Indeed, MCR 7.207(D) states that even "[i]f the appellant abandons the initial appeal or the court dismisses it, the cross appeal may nevertheless be prosecuted to its conclusion." See *In re MCI*, 255 Mich App 361, 364-365; 661 NW2d 611 (2003).

Where, as here, the plain terms of the rules do not conflict with each other, we interpret them individually by their unambiguous terms. *People v Webb*, 458 Mich 265, 274; 580 NW2d 884 (1998). If we can construct two rules so that they do not conflict, "that construction should control." *Travelers Ins v U-Haul of Michigan*, 235 Mich App 273, 280; 597 NW2d 235 (1999).

We recognize that there is dicta in a previous opinion of this Court, *Roberts v Pontiac*, 176 Mich App 572, 574 n 1; 440 NW2d 55 (1989), that suggest a different result. However, in addition to the dicta, the case is not binding on this Court given its issuance before November 1, 1990. MCR 7.215(J)(1); *Carr v City of Lansing*, 259 Mich App 376, 383-384; 674 NW2d 168 (2003). Moreover, our Supreme Court reversed this Court's attempt to limit a cross-appeal in *Bancorp Group, Inc v Meister*, unpublished opinion per curiam of the Court of Appeals, issued January 20, 1998 (Docket No. 174566). In this Court's unpublished opinion, the panel opined that the defendants' "cross appeal was . . . limited to the order appealed, i.e., the trial court's decision to grant a

---

[5] In Docket No. 248104, the CEMS defendants were granted leave to appeal. There is no question that plaintiffs were entitled under MCR 7.207 to file a cross-appeal in that case.

new trial." Our Supreme Court subsequently issued an order, in *Bancorp Group, Inc v Meister*, 459 Mich 944 (1999), holding that there was "no basis for the Court of Appeals conclusion that it lacked jurisdiction to consider the issues raised on the cross appeal." The jurisdictional issue before us is virtually the same as that presented in *Bancorp, supra,* and we accordingly rely on our Supreme Court's direction in this case. Farenger and Schultz filed an appeal of right in Docket No. 247983, and the plain language of MCR 7.207(A)(1) does not limit plaintiffs' right to file a cross-appeal. There is "no basis" for Farenger and Schultz's claim that we lack jurisdiction to consider plaintiffs' argument. *Bancorp, supra* at 944.

In Docket Nos. 247983 and 248104, the trial court's denial of plaintiffs' motion for summary disposition is affirmed. In Docket Nos. 247983 and 248104, the trial court's order denying defendants' motions for summary disposition is reversed.

SAAD, P.J., concurred.

BORRELLO, J. (*concurring in part and dissenting in part*). I concur with the majority that the trial court's decision to deny defendant's motions for summary disposition was error requiring reversal for the reasons stated by the majority.

However, I strongly dissent from the majority's attempt to enlarge the scope of this Court's jurisdiction. I additionally dissent because I believe that this Court correctly asserted the application of the court rules at issue in *Newton v State Police*, 263 Mich App 251; 688 NW2d 94 (2004), as I explained in my dissent in *Walsh v Taylor*, 263 Mich App 618; 689 NW2d 506 (2004).

Because my reason for dissenting in this case is identical to my reason for dissenting in *Walsh, supra,* I quote from my dissent in *Walsh*:

> The majority contends that when a trial court denies a motion for summary disposition on *any* basis where the defense of governmental immunity *could* be raised, this Court acquires jurisdiction to review *all* matters under MCR 7.203(A) and MCR 7.202(6)(a)(v). The majority states:
>
> "We do not believe that our Supreme Court intended the court rule to be read so restrictively that governmental bodies would be *forced* through discovery and trial whenever their motion for dismissal is denied on grounds other than MCR 2.116(C)(7), *merely because the plaintiff contends that the governmental agency is not immune. [Ante at 625 (emphasis added).]*"
>
> Impliedly, if not outrightly stated, the majority believes that plaintiffs allege facts outside the scope of governmental immunity simply to avoid governmental immunity, and not because the cause of action is based in law or fact. Whether intended or not, the clear message of the majority is that this Court must now act as a guardian against a perceived onslaught of frivolous litigation that our trial courts are seemingly ill-equipped to discover. Accordingly, I reject the majority's contention that plaintiff is filing a frivolous claim simply to avoid the defense of governmental immunity. Even assuming an onslaught of frivolous litigation, the trial courts—not this Court—are empowered to be the initial adjudicators of such perceived frivolous claims. However, the majority would have this Court become the court of initial jurisdiction to decide matters that may not have been raised at the trial court level, giving rise to another implied belief of the majority—that this Court should become a trier of fact. The concept of questions of fact being tried by the trier of fact, and not by panels of this Court, is still the jurisprudence of this state.
>
> Thomas Jefferson understood the problems inherent when courts attempt to expand their statutory authority when he wrote:

"Our judges are as honest as other men and not more so. They have with others the same passions for party, for power, and the privilege of their corps. Their maxim is *boni judicis est ampliare jurisdictionem* [good justice is broad jurisdiction], and their power the more dangerous as they are in office for life and not responsible, as the other functionaries are, to the elective control. The Constitution has erected no such single tribunal, knowing that to whatever hands confided, with the corruptions of time and party, its members would become despots. It has more wisely made all the departments co-equal and co-sovereign within themselves. [Lipscomb & Bergh, eds, *The Writings of Thomas Jefferson* (Washington, D.C.; Thomas Jefferson Memorial Ass'n, 1903-1904), vol 15, p 277, Letter by Thomas Jefferson to William C. Jarvis, 1820.]"

This Court has taken great pains to distinguish between a motion brought under MCR 2.116(C)(7), (C)(8), and (C)(10). *Wilson v Alpena Co Rd Comm*, 263 Mich App 141; 687 NW2d 380 (2004). Similarly, the panel in *Newton, supra*, stated:

"The plain language of these court rules, interpreted in a common-sense fashion, lead us to conclude that this exception applies only to situations where the denial of summary disposition is directly based on a finding that the moving party is not entitled to government[al] immunity and not to a situation where, although a claim of governmental immunity has been asserted, the trial court denies a summary disposition motion because the party opposing summary disposition has stated a sufficient factual case to avoid summary disposition — in other words, as in this case, where the motion is actually disposed of as a MCR 2.116(C)(10) motion rather than a (C)(7) motion. [*Newton, supra* at 257.]"

The *Newton* Court understood that there are differences between C(7) and C(10) motions. The majority in this case would eliminate such distinctions. This Court in *Newton* correctly stated and decided the case, in part, on these distinctions. As this Court stated in *Newton, supra* at 259:

"In our opinion, the trial court did not make a legal determination concerning whether defendant was entitled

to claim governmental immunity. Instead, the trial court made a determination that there were genuine issues of material fact to be resolved by the trier of fact. Therefore, the appeal in this case was taken from a (C)(10) determination rather than a (C)(7) determination. The order from which defendant claimed an appeal was therefore not a final order under MCR 7.202(7)(a)(v) and MCR 7.203(A)(1). Accordingly, defendant was required by the court rules to file an application for leave to appeal rather than a claim of appeal."

Thus, where a trial court has not made a finding whether a defendant is governmentally immune, it is premature for this Court to do so. However, the defendants in *Newton* were not precluded from raising the defense of governmental immunity. They could have asked for this Court to decide the issue by filing an application for leave to appeal. Accordingly, I dissent. [*Walsh, supra* at 641 (emphasis in original).]