PEOPLE, *ex rel.* SIMMONS, *v.* ANDERSON.

1. OFFICERS—VACANCIES—STATUTES—FAILURE TO OBSERVE CONDITIONS—CONSTRUCTION OF STATUTES.

   A construction should not be placed upon any statute, enumerating the qualifications for office, which would require procedure not plainly set up in the statute, and which would operate to defeat the will of the electors by creating vacancies caused by a failure to observe conditions which the statute has not specifically imposed.

2. SCHOOLS AND SCHOOL DISTRICTS—OFFICERS—QUALIFICATION OF TRUSTEES—OATH OF OFFICE—ACCEPTANCE.

   Act No. 154, Pub. Acts 1903, § 1 (2 Comp. Laws 1915, § 5892), providing that a township school district shall be-

come a separate organization when the first trustees shall have been duly elected and shall have filed their acceptances with the township clerk, and section 2, providing that the officers elected April, 1903, shall hold until the trustees elected in July, 1903, shall have filed their acceptances and become duly qualified, and that subsequently elected trustees shall hold until their successors are duly qualified and file their "acceptances," and section 3, requiring the first trustees to take the constitutional oath of office within five days after notice of their election, and file it with the township clerk, must, in view of the fact that the evident purpose of the act was to conform the schools covered by it to the general school law then in existence, which did not require a constitutional oath of office as a qualification of an acceptance, be construed as not requiring a constitutional oath in addition to the writing accepting the office to constitution an "acceptance."

3. SAME.

Act No. 21, Pub. Acts 1903, § 5 (2 Comp. Laws 1915, § 5672), changed the qualifications of general school officers by requiring a property affidavit in addition to an acceptance of the office.

4. STATUTES—CONSTRUCTION BY DEPARTMENTAL STATE OFFICERS.

While not binding on the courts, the construction given laws by departmental State officers is entitled to serious consideration.

5. SCHOOLS AND SCHOOL DISTRICTS—OFFICERS—ACCEPTANCE—VACANCY.

Under 2 Comp. Laws, § 4667 (2 Comp. Laws 1915, § 5669), where a newly-elected township school trustee has filed his acceptance within the required time there is no vacancy.

6. SAME—OFFICERS—TERMINATION OF OFFICE—ACCEPTANCE.

Under Act No. 154, Pub. Acts 1903, § 2 (2 Comp. Laws 1915, § 5893), the right of an incumbent of the office of township school trustee to hold over expires when his successor files his acceptance.

7. SAME—CONSTITUTIONAL LAW—OFFICERS—OATH OF OFFICE.

Under the Constitution, Art. xvi, § 2, providing that all officers, executive and judicial, except those exempted by law, shall, before entering upon the duties of their offices, take the prescribed oath, school officers are executive officers.

Error to Alger; Fead, J. Submitted April 12, 1917. (Docket No. 153.) Decided September 27, 1917.

Quo warranto proceedings by the people of the State of Michigan, on the relation of David E. Simmons, prosecuting attorney, against August A. Anderson to try the title to the office of school trustee. Judgment of ouster. Defendant brings error. Affirmed.

*W. S. Hill* (*C. F. Button,* of counsel), for appellant.

*R. R. Stewart,* Prosecuting Attorney, for appellee.

PER CURIAM. The opinion and conclusions of the learned trial judge are adopted and approved, and the judgment affirmed.

"This is a quo warranto proceeding brought by the prosecuting attorney of Alger county, on his own relation, to test the right of respondent to the office of member of the board of education of the Rock River township school district in such county.

"Respondent, at the time of the school election on July 10, 1916, was a duly elected and qualified trustee of the district. He was a candidate for reelection at that time, but was defeated. Three new members were elected, two of whom have properly qualified, and the present controversy revolves around the status of the third member elected, Alec Chartier, in whose favor a judgment is asked herein. Within ten days after the election Chartier filed with the secretary of the board of education a written acceptance of the office accompanied by an affidavit of his property qualifications, in conformity with the provisions of 4 How. Stat. (2d Ed.), § 9891 (2 Comp. Laws 1915, § 5672). He neither then, nor has he since filed the oath of office provided for in article 16, § 2, of the Constitution of the State. On July 24th, the members of the board, old and new, including both Chartier and respondent, met to organize. The secretary reported that two vacancies existed in the board, caused by the failure of Chartier and one John Akkala to file their constitutional oaths of office. The board immediately declared such offices vacant, and elected re-

spondent and Akkala to fill them. Akkala took and subscribed the oath and filed same, claiming to act as an elective and not as an appointive officer. No exception seems to have been taken to this course. Respondent qualified. Chartier, apparently accepting the secretary's interpretation of the law, withdrew from the meeting, but not from the room, stating that he had made a mistake. No further business was done. One July 26th another meeting of the board was held, at which Chartier, having had legal advice from the prosecuting attorney, was present, seeking recognition as a member, but he was informed by the secretary before the meeting that he would not be recognized as a trustee. The board proceeded to business, respondent acting as a member (Chartier in the room, but not acting), and elected officers, two of the members voting 'No' on all elections. While the board was so acting, or immediately after the adjournment, the two dissenting members and Chartier, in the same room and in the presence of the other members, proceeded to organize a board, demanding that the secretary take minutes of their meeting and, upon his refusal, appointed a temporary secretary, Chartier, and elected a president and treasurer. This board, consisting of three of the four recognized members, Akkala, Zeno, and Tunteri, with Chartier, has held meetings since and has transacted business. Chartier has acted as the secretary of such board in the absence of the secretary *de jure*, who has attended none of the meetings. The secretary and respondent, not constituting a quorum, have held no meetings.

"The principal legal question involved is whether it was necessary for Chartier to file a constitutional oath of office in order to qualify as trustee under his election. The incidental question is also raised of what effect the failure to file such oath has upon respondent's title to the office, either as a hold-over official or as an appointee. The determination of these questions requires an examination both of the statutes and the Constitution of the State.

"I. The Statutes.

"Rock River school district is operating under the provisions of Act No. 154 of the Public Acts of 1903.

The act is amendatory to and supersedes the original upper peninsula township school district act, enacted in 1891, and found in 2 Comp. Laws, § 4823 *et seq.* (2 Comp. Laws 1915, § 5892 *et seq.*). Under the original act, elections were held at the time of the annual township election in April, and only constitutional electors could vote at them. The board of education consisted of the township clerk, two school inspectors, and two trustees. All trustees were required to take the constitutional oath of office. They held for the terms for which they were elected, and until their successors were 'elected and qualified.' The general school laws were applicable to such district except as they were inconsistent with the provisions of the act. The district became organized when a certified copy of the necessary petition, together with the determination of the proper officers, was filed with the county clerk and the secretary of the board of school inspectors of the county. The first election was to be held at the then next succeeding township election.

"Act No. 154 of the Public Acts of 1903 made sweeping changes in the law, evidently for the purpose of eliminating the schools from the vicissitudes of township politics and to make the law more conformable to the general school laws. It applied automatically to the township districts then in being. By this act, a new district becomes organized when the officers shall have been duly elected and file their 'acceptances' with the township clerk, the elections were held in July. 'The qualifications of voters and the conditions of eligibility shall be the same as provided in the general school laws.' The trustees hold office until their successors are duly elected 'and file their acceptances.' The officers elected at the April election in 1903 held office in those districts already formed until their successors chosen in July, 1903, had 'filed their acceptances and become duly qualified.' The first trustees elected under the act were required, within five days after notice of their election by the township clerk, to take and subscribe the constitutional oath and file it with the township clerk. Thereafter the elected trustees filed their 'acceptances' with the secretary of the board of education. Appointed trustees are re-

quired to take the constitutional oath within five days after appointment. The general school laws are in force in the district 'except such as shall be inconsistent with the provisions of this act.'

"It is urged by counsel for respondent that trustees elected after the first election are required to take the constitutional oath in order to qualify for office. Section 1 provides that the district shall become a separate organization when the first trustees 'shall have been duly elected and shall have filed their acceptance with the township clerk.' Section 3 requires the first trustees to take the constitutional oath of office within five days after notice of their election and to file it with the township clerk. The argument is that these two provisions, read together, define 'acceptance' as the constitutional oath of office, section 3 specifying the requirements of the 'acceptance.' It is also urged that, inasmuch as the first officers elected and those appointed by the board to fill vacancies must file the constitutional oath of office, it was the evident intent of the legislature that all trustees should file the oath. There is considerable force in this argument, and it would be very persuasive under the rule requiring the harmonizing of statutory provisions, were the act of 1903 an original act, independent of other laws and complete in itself. Instead of so being, it is an amendatory or revisory act, joined by its own terms to the general school laws and dependent upon them in a large measure for the execution of its provisions. In drafting the act, the framework of the 1891 law was used, some of its provisions were incorporated without material change, alterations made here and there in the body of sections to bring the whole scheme of the schools more in line with the general system, but preserving the township district organization, and the result is a somewhat inartificial act, not entirely harmonious, and certainly not complete.

"Viewing the act in itself, reasonable argument may be advanced both for and against the proposition that 'acceptance' means the constitutional oath of office. The argument of counsel for respondent in favor of the proposition is logical and reasonable. On the other hand, an examination of the statute discloses that the word 'acceptance' is used in connection with the quali-

fications only of the elected trustees, and is not applied to those appointed by the board. Section 2 provides that the officers elected in April, 1903, shall hold until the trustees elected in July, 1903, 'shall have filed their acceptances and become duly qualified.' The same section provides that subsequently elected trustees shall hold until their successors are elected and file their 'acceptances.' This difference in language used in the same section, but referring to different conditions, would seem to indicate an intention that officers elected in July were required to do something more than to file their acceptances in order to 'become duly qualified.' That something is set up in the next section, where they are specifically required to take the constitutional oath. Were the act complete in itself and an original statute, the construction that the trustees elected after the first election are required only to file an acceptance would not be unreasonable.

"Moreover, I do not think that a construction should be placed upon any statute, enumerating the qualifications for office, which would require procedure not plainly set up in the statute, and which would operate to defeat the will of the electors by creating vacancies caused by a failure to observe conditions which the statute has not specifically imposed. School officers especially, who are entirely subject to the control of the legislature, should not be required, on peril of forfeiture of their offices, to determine the intention which may be gathered from a statute in an attempt to harmonize its various provisions. They should be entitled to take office upon doing what the law says they shall do. While counsel say it is very plain from the law that all trustees must take the constitutional oath, it would appear the question is not entirely free from doubt from the fact that both the prosecuting attorney of the county and the attorney general of the State have rendered opinions that Chartier was properly qualified upon filing his written acceptance and affidavit, and that the constitutional oath was not necessary. It should be the purpose to sustain the right of an elected officer who has fulfilled the plain language of the statute in seeking to qualify rather than to require him to depart from the language and guess what the intention of the legislature was. Qualifica-

tion for office should be made easy rather than difficult, and words used by the legislature should be understood in their common rather than in a technical or a related sense not plainly apparent.

"The statute requires of Chartier merely an acceptance of the office. He filed that, together with the affidavit of property qualification required by the general school law. The statute of 1903 specifically points out nothing more for him to do. His title should be sustained unless the law plainly requires a different ruling.

"The act of 1903 was amendatory of the act of 1891. The word 'acceptance' is not found in the earlier statute, but all trustees were specifically required to take the oath of office. 'Acceptance' was introduced into the later act, always in connection with the qualification for office. Were it a new word as so used, its introduction by amendment into the statute, the term 'oath required by the Constitution' or its equivalent being also retained, would, of itself, indicate a difference. If there were no settled significance to the word, its meaning would have to be determined from the act. But in view of the evident purpose of the act to conform the schools covered by it to the general school system, it is especially significant that there is a departure from the original language of the act, and that a word is introduced to express the qualifications of trustees which has been employed in that connection in the general school laws, at least since 1846. Thus, in the general school laws, it has been uniformly provided, until the requirement for a property affidavit in 1903, that the school officers constituting the board of education should 'file a written acceptance of the offices to which they have been respectively elected'; and a new district was deemed organized when any two of the officers elected at the first meeting had filed their 'acceptance.' 1 Comp. Laws 1857, §§ 2248, 2249; 1 Comp. Laws 1871, §§ 3586, 3587; 2 How. Stat. §§ 5037, 5057; 2 Comp. Laws 1897, §§ 4650, 4670 (2 Comp. Laws 1915, §§ 5652, 5672). In none of the general school laws, applying either to primary or graded schools, so far as I have been able to find, is there any mention of the constitutional oath as a qualification for the office of trustee. In all such laws

up to 1903; the sole qualification was the acceptance of the office in writing. And in 1903, at the same session in which the act in question was passed, the legislature changed the qualifications of the general school officers only by requiring the property affidavit in addition to the acceptance. Act No. 21, Pub. Acts 1903 (2 Comp. Laws 1915, § 5669).

"While, from the act itself, different reasonable conclusions may be drawn as to the necessity for the constitutional oath, it appears to me that the proper rule of construction and the adoption of the word 'acceptance' from the general school laws render unnecessary the taking of the constitutional oath by Chartier as a qualification for the office.

"But, even if proper, it is not necessary to indulge in finely drawn speculations as to the intent of the legislature. The controversy at bar is confined to the status of a trustee elected long after the act of 1903 became effective in the district. The only provision directed to the requisites of the qualification of such an officer is the proviso in section 3 that he shall file his acceptance with the secretary of the board of education. The first part of the section obviously does not refer to such officer, as it applies specifically to the first officers elected under the act, requires notice of their election by the township clerk, who has no subsequent official connection with the district or its elections, and requires them to take the oath after such notice is given. None of those conditions would be present in subsequent elections. It can hardly be said that the provision relative to the oath of office applies to the subsequent trustees when none of the other provisions making necessary such oath is pertinent. The act, moreover, does not purport to state the time in which the subsequent trustees must qualify, nor define 'acceptance' as there used.

"The key to the whole situation may be found in that provision in section 1 which makes applicable to the district all the general school laws 'except, such as shall be inconsistent with the provisions of this act.' On account of the many necessary school matters which the act does not touch, the reasonable interpretation is that the inconsistency must appear in order to make the act of 1903 operative on any proposition.

And inasmuch as the act does not provide the time for qualification of the trustees elected after the first election, lays down no requisites of qualification, but rather employs a term used in the general school laws, which has always been employed in them as stating the qualifications of school officers, we are necessarily referred to the general laws for the determination of the essentials of qualification.

"I have found no statute or decisions which define an acceptance, but that it is different from the constitutional oath of office can hardly be questioned. While the case is not upon the subject before us, it is apparent from the facts stated that the Supreme Court has recognized an acceptance as being what its ordinary significance would indicate: *i. e.*, a writing in terms accepting the office. *Culver* v. *Armstrong*, 77 Mich. 194 (43 N. W. 776).

"While not binding on the courts, it is also the rule that the construction given laws by departmental State officers having duties to perform under such laws is entitled to serious consideration. In the pamphlets of school laws issued by the department of State and distributed by the educational department, the form of an acceptance is given as an unverified statement that the person accepts the office; the constitutional oath of office not appearing among the forms appended for the guidance of school officers.

"The statute itself disposes of the right of the respondent to hold the office. Chartier having filed his acceptance within the required time, there was no vacancy. 4 How. Stat. (2d Ed.) § 9888 (2 Comp. Laws 1915, § 5669). Consequently the appointment of respondent was ineffective to confer title to the office on him. Respondent's right to the office, as a hold-over official, expired when the acceptance was filed. Section 2, Act No. 154, Public Acts 1903 (2 Comp. Laws 1915, § 5893). A judgment of ouster must therefore run against the respondent.

"In the above discussion, no account has been taken of the constitutional provision, but the whole discussion has been directed to the provisions of the statute. The right of Chartier to a judgment declaring him to be a *de jure* officer must depend upon whether an oath is required in such cases under the Constitution.

"II. The Constitution.

"In article 16, § 2, it is provided: 'Members of the legislature and all officers, executive and judicial, except such officers as may by law be exempted, shall, before they enter on the duties of their respective offices, take and subscribe the following oath or affirmation,' etc. Relator urges that, as school officers are not constitutional officers, the requirements of the Constitution relative to the oath of office do not apply to them. It is true that schools are under the complete control of the legislature (*Belles* v. *Burr*, 76 Mich. 1 [43 N. W. 24] ; *Burton* v. *Koch*, 184 Mich. 256 [151 N. W. 48]), but the Constitution does not confine the provision to the officers it recognizes. The language is broad, applying to all officers, executive and judicial. School officers are executive officers. *People* v. *Salsbury*, 134 Mich. 537, 549 (96 N. W. 936).

"The only authority I have been able to find upon the proposition of what constitutes a sufficient exemption from taking the oath is the statement in Mechem Pub. Off. § 257, upon the authority of *School Directors* v. *People*, 79 Ill. 511, that such exemption may not only be express, but may be gathered from the evident intention of the lawmakers. Neither the Illinois constitution nor the decision is available to me at this time for comparison. And in view of the sweeping character of the provision in our Constitution, together with the requirement that the exemption must be 'by law,' I do not feel justified in holding that a school trustee is exempted from taking the oath. Chartier, therefore, is not a fully qualified officer, and is not entitled to a judgment. Until he has taken the constitutional oath, he cannot enter upon the duties of his office.

"Since the within opinion was written, counsel for respondent has filed a request for findings of fact and conclusions of law. The facts as set out in the beginning of this opinion will stand as the findings of fact. The conclusions of law are stated as follows:

"1. Chartier filed a proper acceptance within the time prescribed by statute and prior to July 24, 1916.

"2. There was no legal vacancy in the office of trustee of the Rock River township school district on July 24, 1916.

"3. The assumed appointment of respondent to a vacancy in such office, on July 24, 1916, was void and of no legal force or effect.

"4. Respondent's right and title to the office of trustee, held by him under former election, ceased when Chartier filed his acceptance.

"5. Respondent has no right or title to such office, either as a hold-over or an appointed official.

"6. The relator is entitled to a judgment of ouster as against respondent, ousting him from the office of such trustee.

"7. As Chartier has not filed a constitutional oath of office, no judgment can be entered in his favor herein.

"Judgment of ouster will be entered against respondent, no judgment being entered as to Chartier."