CORRIGAN, J.
(dissenting). I would affirm defendant’s misdemeanor conviction for contributing to the neglect or delinquency of a minor under MCL 750.145. The Court of Appeals correctly concluded that “there was sufficient evidence for the jury to infer that defendant’s *765 illegal activities could have subjected his [step]son to the jurisdiction of the courts.”[1] At a minimum, defendant’s commission of drug- and weapons-related crimes in the 10-year-old child’s home constituted “act[s]” that “encourage[d], contribute[d] toward, cause[d] or tend[ed] to cause” the child to become “neglected ... so as to come or tend to come under the jurisdiction of the juvenile division of the probate court....” MCL 750.145. Defendant kept heroin and loaded weapons unsecured in the family home. Further, his acts precipitated a police raid on the home in the child’s presence. As a result of the raid, both of the child’s caregivers— defendant and his wife, the child’s mother — were arrested. This evidence was sufficient for a jury to conclude that defendant’s crimes contributed toward or tended to cause the child to come under the jurisdiction of the probate court because the crimes deprived the child of “care necessary for his . . . health or morals,” created a “substantial risk of harm to his . . . mental well-being,” or resulted in an “unfit” home by reason of “neglect” or “criminality.” MCL 712A.2(b)(l) and (2). Indeed, as a result of the crimes, the trial court formally requested an investigation of possible neglect or abuse by the Department of Human Services.
I. FACTS AND PROCEEDINGS
Defendant is a repeat drug offender. On August 16, 2006, officers with the Narcotics Section of the Detroit Police Department executed a warrant to search for drugs in defendant’s home. They knocked on defendant’s door and ultimately forced it open and entered the home. They found a small boy — defendant’s 10- *766 year-old stepson — sitting alone on the living room couch. The boy was scared and crying. He was dressed only in his underwear.
The officers discovered defendant sitting on a bed in one of the home’s two bedrooms. They observed a plastic bag filled with heroin on a plate under the bed. They also found a digital scale used for weighing narcotics and two loaded handguns in the drawer of his bedroom dresser. Finally, the officers confiscated cash that they believed was proceeds from narcotics sales. Both defendant and his wife, the boy’s mother, were arrested and handcuffed at the scene. A jury convicted defendant, as charged, of possession of less than 25 grams of heroin, MCL 333.7403(2)(a)(u), possession of a firearm during the commission of a felony, MCL 750.227b, unlawful possession of a firearm by a felon, MCL 750.224f, and contributing to the neglect or delinquency of a minor, MCL 750.145.
II. STANDARD OF REVIEW
When considering whether the evidence presented at trial was sufficient to support a conviction, a reviewing court must view the evidence in the light most favorable to the prosecution. People v Wright, 477 Mich 1121, 1122 (2007). “A reviewing court need not ‘ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.’ ” Id., quoting Jackson v Virginia, 443 US 307, 319; 99 S Ct 2781; 61 L Ed 2d 560 (1979) (additional quotation marks and citation omitted). “Rather, ‘the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.’ ” Wright, 477 Mich at 1122, quoting Jackson, 443 US at 319 (emphasis omitted).
*767 III. ANALYSIS
A. MCL 750.145
MCL 750.145 provides:
Any person who shall by any act, or by any word, encourage, contribute toward, cause or tend to cause any minor child under the age of 17 years to become neglected or delinquent so as to come or tend to come under the jurisdiction of the [family] division of the [circuit] court, as defined in [MCL 712A.2], whether or not such child shall in fact be adjudicated a ward of the . .. court, shall be guilty of a misdemeanor.[2]
Significantly, the statute does not require the evidence to show that a defendant’s acts actually caused the child to come under the court’s jurisdiction. Rather, the text establishes a fairly low threshold, asking whether a defendant’s acts encouraged, contributed toward, caused, or tended to cause a child to come or tend to come under the court’s jurisdiction. And, crucially, the statute applies “whether or not such child shall in fact be adjudicated a ward” of the court.
First, as the majority opinion observes, the statute twice employs the word “tend.” “Tend” is a commonly used word that needs little explanation.[3] According to *768 Random House Webster’s College Dictionary (2d ed), “tend” means in relevant part:
1. to be disposed or inclined in action, operation, of effect to do something .... 3. to lead or conduce, as to some result or condition.... 4. to be inclined to or have a tendency toward a particular quality, state or degree .... 5. (of a course, road, etc.) to lead or be directed in a particular direction....
Webster’s defines “tendency” in relevant part as follows: “1. a natural or prevailing disposition to move, proceed, or act in some direction or toward some point, end, or result. 2. an inclination, bent, or predisposition to something.” Id. Finally, Webster’s states that to “predispose” is “1. to make susceptible or liable: genetic factors predisposing us to disease. 2. to dispose beforehand; incline; bias.” Thus, MCL 750.145 essentially requires a jury to conclude that a defendant’s acts would naturally lead to, or make a child susceptible to, court jurisdiction.
*769 Second, a defendant’s acts need not actually cause, or be the sole cause of, a tendency toward the court having jurisdiction over the child. Rather, it is sufficient for a jury to conclude that the acts “encourage[d]” or “contribute[d] toward” such a tendency.[4] MCL 750.145. The only relevant definition of “encourage” found in Webster’s is “to promote; foster.” Random House Webster’s College Dictionary (2001). Webster’s further states that to “contribute to” means “to be an important factor in.” Id. Thus, to find a defendant guilty of this misdemeanor, a jury need only conclude that the defendant’s acts promoted, or were an important factor in, a child’s susceptibility to the court’s jurisdiction.
Finally, the statute not only lacks any requirement that actual court jurisdiction be realized, it also does not require that the child become a ward of the court if the court does actually assume jurisdiction as the result of alleged abuse or neglect. As I explain further below, an order assuming court jurisdiction over a child is distinct from an order rendering the child a court ward. The court may take initial jurisdiction in order to ensure that a child is protected, but the child may never become a court ward; that is, he may not be removed from his parents’ care although conditions justifying initial jurisdiction are present. Further, even if the child becomes a court ward, this status does not necessarily lead to termination of parental rights; the child may simply become a temporary ward. MCL 712A.20. Because MCL 750.145 applies although the child may never even become a temporary ward of the court, the Legislature has signified that a misdemeanor conviction *770 under MCL 750.145 is appropriate although a child is susceptible only to the beginning stages of court jurisdiction. A conviction is not predicated on the child’s susceptibility to being removed from his parents’ care, let alone on termination of their parental rights.
B. MCL 712A.2
Because a jury must be able to conclude that a defendant’s acts affected a child’s tendency to come under the court’s jurisdiction as defined in MCL 712A.2, we must also address MCL 712A.2. The prosecutor here argued that defendant’s acts tended to cause court jurisdiction as a result of both delinquency and neglect. I focus on neglect because the evidence on this point is particularly strong.[5] Pursuant to MCL 712A.2(b), the family division of the circuit court may take jurisdiction over a child:
(1) Whose parent or other person legally responsible for the care and maintenance of the juvenile, when able to do so, neglects or refuses to provide proper or necessary support, education, medical, surgical, or other care necessary for his or her health or morals, who is subject to a substantial risk of harm to his or her mental well-being, who is abandoned by his or her parents, guardian, or other custodian, or who is without proper custody or guardianship. ... [or]
*771 (2) Whose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in. [MCL 712A.2(b).]
A court may authorize a petition for jurisdiction under MCL 712A.2(b) “upon a showing of probable cause that 1 or more of the allegations in the petition are true and fall within the provisions of [MCL 712A.2(b)].” MCL 712A.13a(2). The probable cause standard “requires a quantum of evidence ‘sufficient to cause a person of ordinary prudence and caution to conscientiously entertain a reasonable belief ” that the fact asserted is true. People v Yost, 468 Mich 122,126; 659 NW2d 604 (2003), quoting People v Justice (After Remand), 454 Mich 334, 344; 562 NW2d 652 (1997). Thus, the court takes jurisdiction on the basis of a reasonable belief that a child is subject to neglect at the time jurisdiction is sought. Significantly, this less rigorous standard permits protection of children in emergency situations but by no means automatically leads to the initiation of proceedings to terminate parental rights.
Indeed, an initial exercise of court jurisdiction may result in a wide array of outcomes. For example, the court may permit the child to remain with his parents “under reasonable terms and conditions necessary for either the juvenile’s physical health or mental well-being.” MCL 712A.13a(3). The court may also “order a parent, guardian, custodian, nonparent adult, or other person residing in a child’s home to leave the home and, except as the court orders, not to subsequently return to the home” under some circumstances. MCL 712A.13a(4). Finally, the court may place a child temporarily with relatives or foster care providers. See MCL 712A.13a(8) to (10), (13), and (14). This last option requires that the child be made a temporary court ward. See MCL 712A.19b(l); MCL 712A.19(3). As noted *772 above, temporary court custody is distinct from permanent custody, MCL 712A.20; temporary custody does not entail termination of parental rights but enables parents to regain custody in the future by complying with a service plan designed to “facilitate the child’s return to his or her home ...MCL 712A.18f(3)(d); see also MCL 712A.13a(8)(a). Thus, again, it is significant that the threshold for a misdemeanor conviction under MCL 750.145 rests on rendering a child susceptible to the court’s jurisdiction “whether or not such child shall in fact be adjudicated a ward” of the court. In other words, MCL 750.145 applies when a child is susceptible even to the very beginning stages of a child protective proceeding, when a court takes jurisdiction for his protection under a probable cause standard, even though he may never be removed from his parents’ care.
This discussion highlights the normal threshold necessary for the court to establish jurisdiction over a child. However, important for my analysis here, I reiterate that the prosecution need not establish that there was actual jurisdiction over the child or that there was actual probable cause for such jurisdiction. The prosecution need only show that defendant’s actions were of such a kind or sort that they contributed to or tended to cause the child’s susceptibility to the court’s jurisdiction.
C. APPLICATION
Here the police found heroin[6] under defendant’s bed and two loaded guns in an unlocked dresser drawer of *773 the bedroom that defendant shared with the child’s mother. As a result of the raid, defendant and the child’s mother were arrested. The raid thus revealed that, as a result of defendant’s crimes, the child lived in an unsafe home where heroin and loaded weapons were easily accessible to the child. One could certainly entertain a reasonable belief that the accessible guns and extremely dangerous drugs — kept not in a safe or other locked area, but under a bed and in a dresser drawer — posed a significant danger to a 10-year-old child.[7] It would take moments for a child to walk into a bedroom and discover heroin under a bed or open a dresser drawer to discover loaded weapons. I disagree with the majority’s assertion that the child’s awareness of the heroin and weapons is decisive. A jury could conclude that the unsecured heroin and weapons posed a significant danger to the child without regard to whether the child had yet discovered these items. I similarly disagree with the majority’s assertion that “[everything the jury knew about this child was in relation to his presence in the home at the moment of the raid; the jury knew these facts and it knew nothing more.” To the contrary, the jury learned that both defendant and the child lived in the home. From this fact, the jury was entitled to draw reasonable inferences concerning the child’s likely discovery of unsecured, dangerous items.
Accordingly, the evidence of unsecured drugs and two unsecured, loaded weapons was sufficient for a rational jury to conclude that defendant’s acts posed a danger to the child that would tend to result in or contribute toward court jurisdiction, particularly under MCL *774 712A.2(b)(2) which creates jurisdiction over a child “[wjhose home or environment, by reason of neglect, cruelty, drunkenness, criminality, or depravity on the part of a parent, guardian, nonparent adult, or other custodian, is an unfit place for the juvenile to live in.”[8] (Emphasis added.) Defendant’s decision to keep guns and drugs unsecured and easily accessible in the child’s home could also form the basis of a reasonable belief that defendant “neglect[ed] or refuse[d] to provide proper.. . care necessary for [the child’s] health or morals,” or created “a substantial risk of harm to [the child’s] mental well-being” justifying jurisdiction under MCL 712A.2(b)(1).[9]
*775 In sum, defendant’s criminal acts resulted in the presence of dangerous items in the child’s home and a traumatic police raid. Because of these combined facts, the evidence was sufficient for a jury to conclude that defendant’s acts tended to cause, encouraged, or contributed to neglect — of the child’s health or morals, of his mental wellness, or by creating an unfit home — to such an extent that a court was likely to find probable cause to believe that there was neglect and thus that the child was susceptible to the court’s jurisdiction. Accordingly, the Court of Appeals correctly affirmed defendant’s conviction under MCL 750.145. By concluding otherwise, the majority effectively fails to view the evidence in the light most favorable to the prosecution as required by the proper standard of review. The majority focuses on the lack of direct proof that the child was certainly aware of — or already had been directly harmed by — the drugs and weapons. In doing so, it fails to account for the jury’s power to draw fair inferences from the evidence in favor of the prosecution’s view of the case. Viewed in a light most favorable to the prosecution, a rational jury could — and, more importantly, did — conclude that the record revealed beyond a reasonable doubt that the child faced trauma (from the police raid) and/or lived among sufficient potential dangers to render him susceptible to probate court jurisdiction for his protection.
IV ADDITIONAL RESPONSES TO THE MAJORITY
I respectfully suggest that the majority’s analysis is underpinned, to some degree, by a misunderstanding of *776 family division jurisdiction and conflation of the potential assertion of jurisdiction with termination of parental rights. As explained above, and contrary to the majority’s fears, initial court jurisdiction over a child is not akin to a termination proceeding and by no means must lead to termination of parental rights.
Here, for example, the court could have assumed initial jurisdiction because of the unsafe conditions discovered by the police at the time of the raid. But the court may well have immediately returned the child home conditioned on proof of the removal of all guns and drugs — and, indeed, perhaps on removal of defendant himself — from the home. My point is that the court still could have obtained jurisdiction over the child as an initial matter because of defendant’s criminal acts even if there were no grounds for termination and the child never became a court ward but was simply returned to his mother.
I further note, in response to the majority’s fears, that the low thresholds established by MCL 750.145 are arguably consistent with the nature of the crime. Contributing to the delinquency or neglect of a minor is a misdemeanor, MCL 750.145, and thus is not punishable by a prison sentence, MCL 750.6; MCL 750.7; MCL 750.8.[10] Indeed, here defendant was sentenced to 45 days’ jail time served as a result of this conviction. The majority fears that permitting a conviction in this case would “render a conviction under MCL 750.145 an increasingly routine appendage to a broad array of *777 other criminal charges” in which a defendant has been charged with committing a criminal act in a home in which a child is present and it believes that this is not a result the Legislature intended. But this speculative belief about the Legislature’s intent is irrelevant where the text of the statutes is clear. Even if the majority is correct that convictions under MCL 750.145 could be routinely obtained, there would be nothing unconstitutional about such a result and, therefore, we must enforce the statutes as written. Moreover, when a parent actively commits criminal acts within a home inhabited by children, it would be an entirely rational thing for the Legislature to be concerned about the welfare of the children.
In any event, I disagree with the majority’s assertion that this case involves “a ‘by itself’ criminal conviction serving as a basis for a neglect or delinquency conviction.” To the contrary, as discussed above, defendant’s specific acts — keeping unsecured drugs and loaded weapons in the home and necessitating a police raid — were a sufficient basis on which to find probable cause justifying the court’s jurisdiction because the acts compromised the child’s health, morals, and mental well-being or rendered the home unfit for the child as a result of criminality. Therefore, this case is not comparable to the majority’s hypothetical cases in which, for example, a parent merely commits tax fraud, performs unlicensed work, or possesses items such as pirated DVDs or “scalped” football tickets in a home where a child is present. First, most of these supposed crimes do not involve keeping inherently dangerous items unsecured in the home. Second, the effect to a child of a parent’s unlawful activity cannot be ascertained without the surrounding facts of a particular case. For instance, the majority refers to parents who possess unlawful *778 fireworks. Whether such possession could ever form the basis for a court taking jurisdiction over a child would clearly depend on numerous factors including the dangerousness and location of the fireworks and the age of the child. With regard to the majority’s aforementioned fears for lawful gun owners, I express no opinion concerning the circumstances under which a jury could convict a law-abiding gun owner of a misdemeanor under MCL 750.145 because he maintained multiple loaded, accessible guns in a manner that posed significant harm to a child.[11] But, as with the fireworks, the number and the accessibility of the guns as well as the child’s age would be significant. Finally, even under the facts of this case, defendant’s drug- and weapons-related convictions would not necessarily support a charge under MCL 750.145. For instance, if defendant had been arrested on the street and had kept his guns and drugs outside the home — or, at a minimum, in an area less obviously accessible to young children — the evidence may well have been insufficient to support a conviction under MCL 750.145.
In closing, a conviction under MCL 750.145 is proper if a jury can conclude beyond a reasonable doubt that the defendant’s acts tended to cause or contributed toward a child’s tendency to come under the court’s jurisdiction. A jury’s affirmative findings on these issues result only in a misdemeanor conviction. These findings do not cause court jurisdiction; indeed, the child need not necessarily come under the court’s jurisdiction at all. These findings also do not alter the significant protections afforded to parents appearing *779 before the court in child protective proceedings.[12] Although a petition for jurisdiction may be filed in the family division of circuit court as a result of perceived dangers, the court must consider at a preliminary hearing whether jurisdiction is appropriate. MCL 712A.11(1); MCL 712A.13a(2). Perhaps most significant to the majority’s concerns, even if the court takes jurisdiction on the basis of a reasonable belief that the child is in danger, the child need not be removed from his home, and by no means must the court initiate proceedings to terminate parental rights. Indeed, the state is generally required to make affirmative efforts to return the child to his parents; termination proceedings generally are a last resort resulting only after parents have been given time to rectify the initial conditions that led to jurisdiction over the child.[13] MCL 712A.19a(2). Further, where the parents are able to immediately remedy the dangers by taking precautions for the child’s safety, the child may simply be returned home. See MCL 712A.13a(3) (“[T]he court may release the juvenile in the custody of. . . the juvenile’s parents ... under reasonable terms and conditions necessary for either the juvenile’s physical health or mental well-being.”).
*780 v CONCLUSION
For each of these reasons, I would affirm defendant’s misdemeanor conviction for contributing to the neglect or delinquency of a minor under MCL 750.145. A rational jury could — and, most importantly, did— conclude that defendant’s acts rendered his 10-year-old stepson susceptible to the court’s jurisdiction. The majority’s decision to the contrary — which I believe is motivated by unjustified fears and a misunderstanding of initial court jurisdiction — is disloyal to the plain text of MCL 750.145, MCL 712A.2(b), and MCL 712A.13a(2).
YOUNG, J., concurred with CORRIGAN, J.

 People v Tennyson, unpublished opinion per curiam of the Court of Appeals, issued October 16, 2008 (Docket No. 278826), p 4.

2 The statutory language has been altered to reflect the transfer of jurisdiction from the probate court to the family division of circuit court. See MCL 600.1021(l)(e); MCL 712A.l(l)(c). See also MCL 600.1009.

 I find the majority’s lengthy discussion of “tend” unnecessary and confusing. The majority accuses me of “avoiding analysis at all” and failing “to address the various meanings of this term....” But this Court’s duty is to ascertain the plain, everyday meaning of non-technical statutory words. MCL 8.3a; Grievance Administrator v Underwood, 462 Mich 188, 194; 612 NW2d 116 (2000) (“[CJommon words must be understood to have their everyday, plain meaning____”). Justice Mahkman himself has observed that “[t]he ‘common understanding’ of most words is that they possess their plain and ordinary meanings.” Mich United Conservation Clubs v Secretary of State (After Remand), 464 Mich 359, 397-398; 630 NW2d 297 (2001) *768 (Markman, J., concurring). As the author of the majority opinion here, he opines that “tend” conveys that “something is ‘more likely than not’ to occur” and he candidly states: “This common understanding of ‘tend,’ I believe, is taken for granted in everyday speech.” Indeed, the majority ultimately settles on this definition which, incidentally, I believe largely complements the definitions I list and would lead to my result if applied under the proper standard of review while taking full account of the record facts. Under such circumstances, I fail to see how my straightforward approach avoids any necessary analysis. Compare Burlington N & S F R Co v United States, 556 US 599,_,; 129 S Ct 1870,1879; 173 L Ed 2d 812, 823 (2009) (using two brief sentences to define “arrange” as it appears in 42 USC 9607(a)(3) according to “common parlance,” two relevant dictionary definitions, and a case citation); Sington v Chrysler Corp, 467 Mich 144, 155; 648 NW2d 624 (2002) (defining “capacity” as used in MCL 418.301(4) by reference only to the single, most pertinent definition in a common dictionary); Grievance Administrator, 462 Mich at 194 (defining “guidelines” as used in MCR 9.118(A)(3) by reference to a single dictionary definition); People, ex rel Simmons v Anderson, 198 Mich 38, 45; 164 NW 481 (1917) (“[W]ords used by the Legislature should be understood in their common rather than in a technical or a related sense not plainly apparent.”) (emphasis added).

 The majority focuses on the Legislature’s use of the word “tend” in MCL 750.145 “because it requires the lowest threshold of proof.” It is not immediately obvious to me that acts tending to cause delinquency or neglect require less proof than do acts encouraging or contributing toward delinquency or neglect.

 A conviction under MCL 750.145 may be based on a defendant’s act or word that encourages, contributes toward, causes or tends to cause a child either to become “neglected or delinquent” so as to come or tend to come under court jurisdiction. MCL 750.145 (emphasis added). Accordingly, defendant’s conviction should be affirmed if there is sufficient evidence with regard to neglect or delinquency; proof related to only one of these potential grounds for court jurisdiction is adequate for conviction.

 Heroin is classified in the highest, most harmful category of drugs; it is a schedule 1 controlled substance, MCL 333.7212(l)(b), with a “high potential for abuse” and no safe medical use, MCL 333.7211. Possession of any amount of heroin constitutes a felony. MCL 333.7401(2)(a).

 Because the facts revealed multiple unsecured, loaded weapons within a child’s reach combined with similarly accessible heroin, defendant’s acts cannot be directly compared to those of a law-abiding gun owner. I address the majority’s fears concerning law-abiding gun owners later in this opinion.

 This is to say nothing of the danger posed by defendant’s apparent drug-dealing, particularly if he engaged in drug transactions in the child’s home. The jury was not asked to decide whether the evidence showed that defendant engaged in drug sales although testimony by police officers at trial established that, during the raid, they confiscated a digital scale and money they believed was attributable to drug dealing. Arguably this evidence could cause a probate court to form a reasonable belief that defendant’s drug-dealing posed an additional danger to the child worthy of investigation.

 Further, particularly with regard to the child’s mental well-being, the evidence shows that the child was scared and crying during the police raid. Defendant’s criminal acts were the direct cause of the police raid that traumatized the child. I express no opinion concerning whether a police raid caused by a defendant’s criminality could alone justify a conviction under MCL 750.145 as a result of the trauma suffered by a child during the raid, as discussed by the majority. But here defendant’s criminality compromised the child’s well-being and proper custody in multiple ways that the jury or a probate court could consider in aggregate.
I also note that, if both of the child’s caregivers were detained as a result of the police raid, the jury could have reached the alternative conclusion that the child was susceptible to the court’s jurisdiction because he was “without proper custody or guardianship.” MCL 712A.2(b)(l). Under this criterion for jurisdiction, even if the child was simply temporarily without proper custody because of the arrest of his caretakers, the court could take jurisdiction until the child’s return to his mother was appropriate or until other arrangements for his care were *775 made. Although a police officer testified that the child’s mother was arrested at the scene, the majority correctly observes that the record does not clearly establish whether she was then detained or simply released after the police ticketed her. Accordingly, I concede that the prosecutor’s evidence did not show beyond a reasonable doubt that the child was susceptible to the court’s jurisdiction for this alternative reason.

 See also People v Beasley, 370 Mich 242, 246; 121 NW2d 457 (1963) (observing that a felony in Michigan is distinguishable from a misdemeanor “by reason of the place and severity of punishment”); 1 Gillespie, Michigan Criminal Law & Procedure (2d ed), § 1:2, p 9 (“Misdemeanors ... include all crimes for which punishment is provided that do not amount to felonies, and all acts prohibited by statute where the statute imposes no penalty for the violation.”).

 Clearly, mere gun ownership does not endanger children and will not lead to the court taking jurisdiction over a child. Further, legal gun ownership may not be said to render a home unfit for a child under MCL 712A.2(b)(2) due, as here, to criminality.

 It is irrelevant that the judge who presided over defendant’s criminal trial stated at sentencing that he would contact the Department of Human Services to request that a petition be filed to “terminate” defendant’s parental rights. The judge actually — and properly— requested an investigation into possible neglect or abuse. Any resulting child protective proceedings against defendant would take place according the mandates and protections of the juvenile code; the criminal judge’s mention of “termination” is of no moment.

 In 2009, for example, 6,975 child protection petitions alleging abuse or neglect were filed. Only 2,618 termination petitions were filed that year. See Michigan Supreme Court Annual Report 2009, p 45 <http://courts.michigan.gov/scao/resources/publications/statistics/2009/ 2009execsum.pdf> (accessed May 21, 2010).